Filed 8/1/13

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| YANTING ZHANG, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | S178542 |
| v. | ) | |
| | ) | Ct.App. 4/2 E047207 |
| THE SUPERIOR COURT OF | ) | |
| SAN BERNARDINO COUNTY, | ) | |
| | ) | San Bernardino County |
| Respondent; | ) | Super. Ct. No. CIVVS701287 |
| | ) | |
| CALIFORNIA CAPITAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| _____ | ) | |

This case arises at the intersection of the Unfair Competition Law (UCL; Bus. & Prof. Code, § 17200 et seq.) and the Unfair Insurance Practices Act (UIPA; Ins. Code, § 790 et seq.). The question is whether insurance practices that violate the UIPA can support a UCL action. In *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 304 (*Moradi-Shalal*) we held that when the Legislature enacted the UIPA, it did not intend to create a private cause of action for commission of the various unfair practices listed in Insurance Code section 790.03, subdivision (h).[1]  In the wake of *Moradi-Shalal*, a split has developed in

---

[1]  Further unspecified statutory references are to the Insurance Code. Section 790.03, subdivision (h) will be designated "section 790.03(h)."

1

the Courts of Appeal regarding the viability of UCL claims based on insurer conduct covered by section 790.03.

We hold that *Moradi-Shalal* does not preclude first party UCL actions based on grounds independent from section 790.03, even when the insurer's conduct also violates section 790.03.[2] We have made it clear that while a plaintiff may not use the UCL to "plead around" an *absolute* bar to relief, the UIPA does not immunize insurers from UCL liability for conduct that violates other laws in addition to the UIPA. (*Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, 283-284 (*Manufacturers Life*); see also *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 182-183 (*Cel-Tech*); *Quelimane Co. v. Stewart Title Guaranty Co.* (1998) 19 Cal.4th 26, 43 (*Quelimane*); *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553, 565 (*Stop Youth Addiction*).)

Here, plaintiff alleges causes of action for false advertising and insurance bad faith, both of which provide grounds for a UCL claim independent from the UIPA. Allowing her also to sue under the UCL does no harm to the rule established in *Moradi-Shalal*. The *Moradi-Shalal* court made it plain that while violations of section 790.03(h) are themselves not actionable, insureds retain other causes of action against insurers, including common law bad faith claims. Furthermore, UCL actions by private parties are equitable proceedings, with

---

[2]  A first party claim is one brought by the insured against the insurer. Claims by injured parties against a liable party's insurer are third party claims. (See *Zephyr Park v. Superior Court* (1989) 213 Cal.App.3d 833, 835, fn. 2.) Our holding here is confined to the first party context. Third party claims raise distinct analytical and policy issues, which are not involved in this case. (See *Moradi-Shalal*, *supra*, 46 Cal.3d at pp. 301-304.)

limited remedies. They are thus quite distinct from the claims for damages with which *Moradi-Shalal* was concerned.

## I. BACKGROUND

Plaintiff Yanting Zhang bought a comprehensive general liability policy from California Capital Insurance Company (California Capital). She sued California Capital in a dispute over coverage for fire damage to her commercial property. The complaint included causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of the UCL. In her UCL claim, Zhang alleged that California Capital had "engaged in unfair, deceptive, untrue, and/or misleading advertising" by promising to provide timely coverage in the event of a compensable loss, when it had no intention of paying the true value of its insureds' covered claims.

California Capital demurred to the UCL claim, contending it was an impermissible attempt to plead around *Moradi-Shalal*'s bar against private actions for unfair insurance practices under section 790.03.[3] The trial court agreed, and sustained the demurrer without leave to amend. The Court of Appeal reversed, holding that Zhang's false advertising claim was a viable basis for her UCL cause of action. California Capital sought review.

## II. DISCUSSION

"The rules by which the sufficiency of a complaint is tested against a general demurrer are well settled. We not only treat the demurrer as admitting all material facts properly pleaded, but also 'give the complaint a reasonable

---

[3] Defendant noted that the unfair insurance practices prohibited by section 790.03 include false advertising (§ 790.03, subd. (b)), failing to promptly respond to a claim (§ 790.03(h)(2)), and not attempting to settle a claim in good faith (§ 790.03(h)(5)).

3

interpretation, reading it as a whole and its parts in their context. . . .' [Citation.] [¶] If the complaint states a cause of action under any theory, regardless of the title under which the factual basis for relief is stated, that aspect of the complaint is good against a demurrer. '[W]e are not limited to plaintiffs' theory of recovery in testing the sufficiency of their complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. . . .' [Citations.]" (*Quelimane*, *supra*, 19 Cal.4th at pp. 38-39.)

A. *Overview of the UCL*

The UCL defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." (Bus. & Prof. Code, § 17200.) By proscribing "any unlawful" business act or practice (*ibid*.), the UCL " 'borrows' " rules set out in other laws and makes violations of those rules independently actionable. (*Cel-Tech*, *supra*, 20 Cal.4th at p. 180.) However, a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent practices are alternate grounds for relief. (*Ibid*.) False advertising is included in the "fraudulent" category of prohibited practices. (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311-312; *Kasky v. Nike, Inc.* (2002) 27 Cal.4th 939, 950-951.)

We have made it clear that "an action under the UCL 'is not an all-purpose substitute for a tort or contract action.' [Citation.] Instead, the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices. As we have said, the 'overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition.' [Citation.] Because of this objective, the remedies provided are limited." (*Korea Supply Co. v. Lockheed Martin Corp.*

4

(2003) 29 Cal.4th 1134, 1150.) Accordingly, while UCL remedies are "cumulative . . . to the remedies or penalties available under all other laws of this state" (Bus. & Prof. Code, § 17205), they are narrow in scope.

"Prevailing plaintiffs are generally limited to injunctive relief and restitution. [Citations.] Plaintiffs may not receive damages . . . or attorney fees."[4] (*Cel-Tech*, *supra*, 20 Cal.4th at p. 179.) "Restitution under [Business and Professions Code] section 17203 is confined to restoration of any interest in 'money or property, real or personal, which may have been *acquired* by means of such unfair competition.' (Italics added.) A restitution order against a defendant thus requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." (*Kwikset Corp. v. Superior Court* (2011) 51 Cal.4th 310, 336.) "[C]ompensatory damages are not recoverable as restitution." (*Pineda v. Bank of America, N.A.* (2010) 50 Cal.4th 1389, 1402, fn. 14.)

We have also emphasized that the equitable remedies of the UCL are subject to the broad discretion of the trial court. (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 179.) The UCL does not *require* "restitutionary or injunctive relief when an unfair business practice has been shown. Rather, it provides that the court '*may* make such orders or judgments . . . as may be necessary to prevent the use or employment . . . of any practice which constitutes unfair competition . . . or as may be necessary to restore . . . money or property.' " (*Cortez*, at p. 180, quoting Bus. & Prof. Code, § 17203.) "[I]n

---

**4**    Although the UCL does not provide for attorney fees, a prevailing plaintiff may seek attorney fees as a private attorney general under Code of Civil Procedure section 1021.5. (*Davis v. Ford Motor Credit Co. LLC* (2009) 179 Cal.App.4th 581, 600.)

addition to those defenses which might be asserted to a charge of violation of the statute that underlies a UCL action, a UCL defendant may assert equitable considerations. In deciding whether to grant the remedy or remedies sought by a UCL plaintiff . . . consideration of the equities between the parties is necessary to ensure an equitable result." (*Cortez*, at pp. 180-181.)

The voters restricted private enforcement of the UCL in 2004, by approving Proposition 64. Standing under the UCL is now limited to those who have "suffered injury in fact and [have] lost money or property as a result of . . . unfair competition." (Bus. & Prof. Code, § 17204.) Accordingly, to bring a UCL action, a private plaintiff must be able to show economic injury caused by unfair competition. (*Kwikset Corp. v. Superior Court*, *supra*, 51 Cal.4th at p. 326.) Proposition 64 also required that representative actions by private parties must "compl[y] with Section 382 of the Code of Civil Procedure." (Bus. & Prof. Code, § 17203; see *Californians for Disability Rights v. Mervyn's, LLC* (2006) 39 Cal.4th 223, 232.) Therefore, a private plaintiff must file a class action in order to represent the interests of others. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 980.)

B. Moradi-Shalal

The question before us is the extent to which relief under the UCL is limited by the holding in *Moradi-Shalal*, *supra*, 46 Cal.3d 287. There, we reconsidered and abolished a UIPA cause of action that had been approved by *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 (*Royal Globe*). The *Royal Globe* plaintiff was a third party claimant who sued the insurer of property where she was injured. (*Royal Globe*, at p. 884.) She contended the insurer had violated section 790.03(h)(5) by failing to settle her claim promptly and fairly, and section 790.03(h)(14) by advising her not to obtain the services of an attorney. (*Royal Globe*, at p. 884.) The *Royal Globe* court decided that section 790.03(h),

6

enacted in 1959 as part of a comprehensive regulation of the insurance business, permitted third party plaintiffs to sue insurers for unfair acts or practices proscribed by the statute. (*Royal Globe*, at pp. 884-885.)

We overruled *Royal Globe* in *Moradi-Shalal*, *supra*, 46 Cal.3d at page 292. The *Moradi-Shalal* court noted that *Royal Globe* was decided by a bare majority. (*Moradi-Shalal*, at p. 294.) Its decision to permit third party statutory bad faith actions had not been followed by other state courts. (*Id*. at pp. 297-298.) It had been criticized by legal commentators, and was inconsistent with the drafting history of the Model Unfair Claims Practices Act, from which section 790.03(h) was drawn. (*Moradi-Shalal*, at pp. 298-299.) Moreover, parts of the legislative history of section 790.03 itself, unmentioned in *Royal Globe*, indicated that only administrative enforcement by the Insurance Commissioner had been contemplated. (*Moradi-Shalal*, at p. 300.) *Moradi-Shalal* also noted that *Royal Globe* had spawned proliferating litigation, escalating insurance costs, conflicts of interest, complex practical problems, and various analytical difficulties. (*Id*. at pp. 301-303.)

Significant for our purposes is *Moradi-Shalal*'s observation that the abrogation of *Royal Globe* left intact not only administrative remedies, but also traditional common law theories of private recovery against insurers. These include "fraud, infliction of emotional distress, and (as to the insured) either breach of contract or breach of the implied covenant of good faith and fair dealing." (*Moradi-Shalal*, 46 Cal.3d at p. 305.) Thus, *first party* bad faith actions were unaffected by *Moradi-Shalal*.

In *Zephyr Park v. Superior Court*, *supra*, 213 Cal.App.3d 833, the court held that *Moradi-Shalal*'s bar against actions under section 790.03(h) applied to insureds as well as third party claimants. But it noted that insureds retain the common law cause of action for bad faith settlement practices. (*Zephyr Park*, at

7

pp. 837-838.) "There is simply no need, therefore, to perpetuate the availability of section 790.03(h) as the basis for first party causes of action." (*Zephyr Park*, at p. 838; accord, *Tricor California, Inc. v. Superior Court* (1990) 220 Cal.App.3d 880, 888.) We cited *Zephyr Park* with approval in *Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 35.

        C. *Opinions Construing* Moradi-Shalal *and the UCL*

        After *Moradi-Shalal*, the law regarding UCL claims against insurers went through a rather complicated evolution, in a variety of contexts. First, a series of Court of Appeal decisions rejected attempts to state UCL causes of action against insurers in bad faith cases. (*Industrial Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1093, 1097 (*Industrial Indemnity*) [*Moradi-Shalal* barred third party claim for damages under UCL]; *Safeco Ins. Co. v. Superior Court* (1990) 216 Cal.App.3d 1491, 1494 (*Safeco*) [third party action; UCL "provides no toehold for scaling the barrier of *Moradi-Shalal*"]; *Maler v. Superior Court* (1990) 220 Cal.App.3d 1592, 1598 (*Maler*) [first party action; "plaintiffs cannot circumvent [*Moradi-Shalal*'s] ban by bootstrapping an alleged violation of section 790.03 onto Business and Professions Code section 17200 so as to state a cause of action under section 1861.03"[5]].)

        In *Rubin v. Green* (1993) 4 Cal.4th 1187 (*Rubin*), we relied by way of analogy on these Court of Appeal opinions. At issue in *Rubin* was whether injunctive relief was available under the UCL for conduct protected by the litigation privilege (Civ. Code, § 47, subd. (b)). (*Rubin*, at p. 1193.) We decided

---

**5**     Section 1861.03, added in 1988 by Proposition 103, provides in relevant part: "The business of insurance shall be subject to the laws of California applicable to any other business, including, but not limited to, the . . . unfair business practices laws." (§ 1861.03, subd. (a).)

it was not, given the absolute nature of that privilege.  We referred to *Industrial Indemnity*, *Safeco*, and *Maler* as cases where "implied private rights of action alleging bad faith claims against insurers, barred by our opinion in *Moradi-Shalal*, were not resurrected by casting the action as one for relief under the unfair competition statute."  (*Rubin*, at p. 1202.)

However, in the seminal case of *Manufacturers Life*, we distinguished *Rubin* and made it plain that the UIPA does not generally exempt insurers from UCL liability.  Rather, we held, the remedies provided in the UCL are cumulative to those available to the Insurance Commissioner under the UIPA.  (*Manufacturers Life*, *supra*, 10 Cal.4th at p. 263.)  The *Manufacturers Life* plaintiff was an insurance agency.  It alleged a conspiracy by other elements of the insurance industry to retaliate against it for its practice of disclosing to attorneys the actual costs of settlement annuities.  The complaint asserted violations of the UIPA and the Cartwright Act, California's antitrust statute (Bus. & Prof. Code, § 16700 et seq.).  The plaintiff also sought UCL remedies based on the UIPA and Cartwright Act violations.  (*Manufacturers Life*, at pp. 263-265.)

The *Manufacturers Life* defendants argued that permitting a UCL action for an unfair insurance practice prohibited by the UIPA would seriously compromise *Moradi-Shalal*'s bar against private causes of action for violations of section 790.03, even if the practice also violated the Cartwright Act.[6]  (*Manufacturers Life*, *supra*, 10 Cal.4th at p. 268.)  We were not persuaded.  We noted that the Court of Appeal, relying on *Rubin*, had held the plaintiff could not plead around

---

[6]    Section 790.03, subdivision (c) broadly prohibits agreements or concerted action tending to restrain the business of insurance.  Thus, the UIPA substantially overlaps with the Cartwright Act.  (See *Manufacturers Life*, *supra*, 10 Cal.4th at pp. 274, 280.)

*Moradi-Shalal* by basing a UCL cause of action on conduct violating *only* the UIPA, but that a UCL claim was supported when the insurer's conduct independently violated the Cartwright Act. (*Manufacturers Life*, at p. 283.)

We explained that *Rubin* had "analogized" an attempt to plead around the litigation privilege "to the attempts to avoid the bar to 'implied' private causes of action under section 790.03, which several Courts of Appeal had held could not be avoided by characterizing the claim as one under the [UCL]. [Citations.]" (*Manufacturers Life*, *supra*, 10 Cal.4th at p. 283.) "[H]owever, a cause of action for unfair competition based on conduct made unlawful by the Cartwright Act is not an 'implied' cause of action which *Moradi-Shalal* held could not be found in the UIPA. There is no attempt to use the [UCL] to confer private standing to enforce a provision of the UIPA. Nor is the cause of action based on conduct which is absolutely privileged or immunized by another statute, such as the litigation privilege of Civil Code section 47, subdivision (b)." (*Manufacturers Life*, at p. 284.)

"This conclusion does not compromise the rule of *Moradi-Shalal* in any way. The court concluded there that the Legislature did not intend to create new causes of action when it described unlawful insurance business practices in section 790.03, and therefore that section did not create a private cause of action under the UIPA. The court did not hold that by identifying practices that are unlawful in the insurance industry . . . the Legislature intended to bar Cartwright Act causes of action based on those practices. Nothing in the UIPA would support such a conclusion. The UIPA nowhere reflects legislative intent to repeal the Cartwright Act insofar as it applies to the insurance industry, and the Legislature has clearly stated its intent that the remedies and penalties under the [UCL] are cumulative to other remedies and penalties." (*Manufacturers Life*, *supra*, 10 Cal.4th at p. 284.)

10

*Manufacturers Life* had an impact in *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093 (*State Farm*), a first party bad faith action. Insured homeowners sought damages for breach of the implied covenant of good faith, breach of contract, professional negligence, and fraud, based on State Farm's alleged surreptitious alteration of their earthquake insurance coverage. They also pursued UCL remedies. (*State Farm*, at pp. 1099, 1101.) State Farm's demurrer was overruled and it sought writ relief, contending the UCL claim was an improper attempt to plead around *Moradi-Shalal*'s bar against private actions under section 790.03. (*State Farm*, at p. 1101.)

The *State Farm* court denied the writ. Relying on *Manufacturers Life*, it acknowledged that the insureds could not borrow the provisions of section 790.03 to establish an unlawful business practice. (*State Farm*, *supra*, 45 Cal.App.4th at p. 1103.) However, it held that the UCL cause of action *was* supported by the insureds' allegations of fraud and common law bad faith, which included examples of all three varieties of prohibited business practices: unlawful, unfair, and fraudulent. (*State Farm*, at p. 1107.) In particular, the *State Farm* court found that the fraud and bad faith claims were "independent bases for plaintiffs' [UCL] cause of action [that] are not distinguishable from the independent Cartwright Act violation which the Supreme Court recently held was sufficient to support a claim for relief under the [UCL], notwithstanding that the acts complained of also violated section 790.03." (*State Farm*, at p. 1108, citing *Manufacturers Life*, *supra*, 10 Cal.4th at p. 284.)

The *State Farm* court noted that unlike the plaintiffs in *Industrial Indemnity*, *Safeco*, and *Maler*, these insureds had pleaded a proper UCL cause of action seeking only injunctive and restitutive relief. (*State Farm*, *supra*, 45 Cal.App.4th at pp. 1108-1109.) "Nothing in *Moradi-Shalal* suggests that it was

11

addressing anything other than the viability of an implied right of action for *damages*." (*Id*. at p. 1109.)

State Farm argued that recognizing a right of action under the UCL for conduct proscribed by section 790.03 "would revive what the Supreme Court called the 'undesirable social and economic effects of the [*Royal Globe*] decision (i.e., multiple litigation, unwarranted bad faith claims, coercive settlements, excessive jury awards, and escalating insurance, legal and other "transaction" costs).' (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 299.)" (*State Farm*, *supra*, 45 Cal.App.4th at pp. 1109-1110.) The court disagreed: "[W]e believe that this concern is overblown. The injunctive and restitutive remedies authorized under the [UCL] . . . are of very limited utility. They are designed to *prevent* unfair business practices and to require *disgorgement* of money or property obtained by means of such practices. Damages are *not* available under Business and Professions Code section 17203. [Citation.] That means that no claim for compensatory or punitive damages can be recovered in a [UCL] action. It is therefore not at all clear to us how our application of the very clear language of the [UCL] will necessarily resurrect any of the perceived evils of *Royal Globe*." (*State Farm*, at p. 1110.)

In *Stop Youth Addiction*, *supra*, 17 Cal.4th 553, this court discussed the holdings in *Rubin*, *Manufacturers Life*, and the *Safeco* line of cases, without mentioning *State Farm*. The defendant in *Stop Youth Addiction* argued that, because Penal Code section 308 provides no private cause of action for violations of its prohibition against selling cigarettes to minors, UCL remedies for that conduct were unavailable. (*Stop Youth Addiction*, at p. 561.) The defendant claimed *Rubin* had endorsed the *Safeco* court's view that a UCL claim cannot be based on a statute that does not authorize an independent cause of action. (*Safeco*, *supra*, 216 Cal.App.3d at p. 1494; see *Stop Youth Addiction*, at pp. 561-562.) We

12

disagreed, noting that *Manufacturers Life* had limited *Rubin*'s holding to the *absolute* bar to relief created by the litigation privilege.  (*Stop Youth Addiction*, at p. 564.)

We added:  "Neither from our discussion nor from the authorities we cited in *Manufacturers Life* . . . does it follow that a private plaintiff lacks UCL standing whenever the conduct alleged to constitute unfair competition violates a statute for the direct enforcement of which there is no private right of action.  To the contrary, . . . in *Manufacturers Life* we permitted a UCL claim based on the Cartwright Act to go forward, even while recognizing that the conduct alleged as unfair competition also violated the UIPA, for the direct enforcement of which, following *Moradi-Shalal*, there is no private right of action. . . .  [¶]  In *Manufacturers Life*, moreover, we explained that *Moradi-Shalal* was not meant to impose sweeping limitations on private antitrust or unfair competition actions."  (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 565.)  "As relevant here, *Safeco* and similar cases on which [the defendant] relies, such as [*Maler*], *supra*, 220 Cal.App.3d 1592, and [*Rubin*], *supra*, 4 Cal.4th 1187, stand at most for the proposition the UCL cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law."  (*Stop Youth Addiction*, at p. 566.)

We again reaffirmed *Manufacturers Life* in *Quelimane*, *supra*, 19 Cal.4th 26, where the plaintiff claimed that title companies had conspired to withhold title insurance for property purchased at tax sales.  We noted that *Manufacturers Life* had established the viability of Cartwright Act violations as the predicate for a UCL action.  (*Quelimane*, at pp. 42-44.)  We further held that the plaintiffs had stated a UCL claim based on the defendants' allegedly false advertising, which consisted of promising to issue title insurance for any property with good title.  (*Id*. at pp. 51, 54-55.)

13

In *Cel-Tech*, *supra*, 20 Cal.4th 163, we revisited the rule of *Manufacturers Life*, as follows: "If the Legislature has permitted certain conduct or considered a situation and concluded no action should lie, courts may not override that determination. When specific legislation provides a 'safe harbor,' plaintiffs may not use the general unfair competition law to assault that harbor." (*Cel-Tech*, at p. 182.) "[*Rubin*], *supra*, 4 Cal.4th 1187, illustrates this principle. In that case, the plaintiff relied on the unfair competition law to pursue an action that the litigation privilege of Civil Code section 47, subdivision (b), otherwise prohibited. We 'rejected the claim that a plaintiff may, in effect, "plead around" absolute barriers to relief by relabeling the nature of the action as one brought under the unfair competition statute.' ([*Rubin*], *supra*, 4 Cal.4th at p. 1201.)" (*Cel-Tech*, at p. 182.)

"A plaintiff may thus not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition.' (*Manufacturers Life*[, *supra*,] 10 Cal.4th 257, 283.) The rule does not, however, prohibit an action under the [UCL] merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct. To forestall an action under the [UCL], another provision must actually 'bar' the action or clearly permit the conduct." (*Cel-Tech*, *supra*, 20 Cal.4th at pp. 182-183.)

After *Cel-Tech*, a split in Court of Appeal opinion was created by *Textron Financial Corp. v. National Union Fire Ins. Co*. (2004) 118 Cal.App.4th 1061 (*Textron*), which disagreed with *State Farm*, *supra*, 45 Cal.App.4th 1093. Textron held a security interest in a bus insured by the defendant. It submitted a claim after the bus was damaged in an accident. The claim was denied, and Textron sued the insurer for breach of contract, fraud, and bad faith. It also included a UCL claim for injunctive relief and restitution. The trial court sustained a demurrer to the UCL claim. Textron prevailed on its other claims at trial, but filed

14

an appeal challenging the demurrer ruling. (*Textron*, at pp. 1067-1070.) The Court of Appeal affirmed, reasoning that the unfair practices alleged in the complaint were "the type of activities covered by the UIPA," and that "merely alleging these purported acts constitute unfair business practices under the unfair competition law is insufficient to overcome *Moradi-Shalal*." (*Id*. at pp. 1070-1071.)

"While insurance companies are subject to California laws generally applicable to other businesses, including laws governing unfair business practices (. . . § 1861.03, subd. (a)), parties cannot plead around *Moradi-Shalal*'s holding by merely relabeling their cause of action as one for unfair competition." (*Textron*, *supra*, 118 Cal.App.4th at p. 1070, citing *Manufacturers Life*, *supra*, 10 Cal.4th at pp. 283-284, *Maler*, *supra*, 220 Cal.App.3d at p. 1598, and *Safeco*, *supra*, 216 Cal.App.3d at page 1494.) "The persuasiveness of [*State Farm*] has been undercut by the Supreme Court's subsequent disapproval of its definition of 'unfair' business practices." (*Textron*, at p. 1071; see *Cel-Tech*, *supra*, 20 Cal.4th at pp. 184-185 [disapproving definition of "unfair" business acts or practices quoted in *State Farm*].) The *Textron* court concluded: "[G]iven the Supreme Court's disapproval of *State Farm*'s 'amorphous' definition of 'unfair' practices and its focus on legislatively declared public policy, reliance on general common law principles to support a cause of action for unfair competition is unavailing." (*Textron*, at p. 1072.)

In the case at bench, the Court of Appeal disagreed with *Textron*, believing it "focused too narrowly on the 'unfair' prong of potential liability under the UCL." The court endorsed the proposition, which it drew from *State Farm*, that an insurer is not protected from UCL liability simply because its claims handling practices may be prohibited by section 790.03. It decided that Zhang's false advertising claim supported her UCL cause of action, a result it deemed consistent

15

with *Moradi-Shalal* and *Manufacturers Life*. For reasons set forth below, we conclude the Court of Appeal correctly followed *State Farm* instead of *Textron*.

D. *The Viability of Zhang's UCL Claim*

As noted, Zhang's UCL claim is premised on allegations of false advertising. She contends California Capital misleadingly advertised that it would timely pay the true value of covered claims. She asserts that its treatment of her claim demonstrated it had no intention of honoring that promise. California Capital's demurrer was based on *Textron*'s rule that a UCL claim may not be brought for settlement practices prohibited by the UIPA. (*Textron*, *supra*, 118 Cal.App.4th at pp. 1070-1071.) California Capital argued that the crux of the UCL claim was improper claims handling, and the allegations of unfair competition and false advertising were nothing more than an attempt to plead around the bar of *Moradi-Shalal*.

In this court, California Capital maintains its insistence that Zhang's UCL claim is actually directed at its claims handling, not its advertising. It argues that any bad faith claim might be turned into a false advertising suit, because all insurers at least impliedly promise to pay what they owe under their policies. California Capital urges us to follow *Textron* and the *Safeco* line of cases, and to disapprove *State Farm*.[7] However, we hold *State Farm* consistent, and *Textron* inconsistent, with our decisions on the scope of UCL liability.

---

[7] The first argument presented in California Capital's brief is that no UCL cause of action may be based on an insurer's handling of a fire loss claim, because the exclusive remedy in disputes over such claims is the appraisal process provided in section 2071. This sweeping proposition, which would bar not only UCL actions but also the first party fraud and bad faith actions left untouched by *Moradi-Shalal*, was not raised in the trial court, the Court of Appeal, or the petition for review. We decline to consider it for the first time at this late stage. (See Cal. Rules of Court, rules 8.504(b)(1), 8.516(b), 8.520(b)(2)(B), (3).)

16

In *Manufacturers Life*, we held that the UIPA does not exempt insurers from liability for anticompetitive conduct, and therefore acts violating both the UIPA and the Cartwright Act could give rise to a UCL claim. (*Manufacturers Life*, *supra*, 10 Cal.4th at pp. 279-280, 283-284.) The *State Farm* court correctly recognized that this reasoning supports claims for UCL relief based on conduct proscribed by the UIPA, if it is independently actionable under the common law of insurance bad faith. (*State Farm*, *supra*, 45 Cal.App.4th at p. 1108.)[8] In *Stop Youth Addiction* and *Cel-Tech*, we explained that to bar a UCL action, another statute must absolutely preclude private causes of action or clearly permit the defendant's conduct. (*Stop Youth Addiction*, *supra*, 17 Cal.4th at pp. 565-566; *Cel-Tech*, *supra*, 20 Cal.4th at pp. 182-183.) *Moradi-Shalal* itself established that while violations of section 790.03 are themselves not actionable, there is no bar to

---

[8]     As the *State Farm* court also discerned, *Manufacturers Life* made it clear that after *Moradi-Shalal*, the provisions of section 790.03 may not be borrowed to serve as a basis for a UCL action, even though section 1861.03 specifies that the "business of insurance" is subject to the provisions of the UCL. (*State Farm*, *supra*, 45 Cal.App.4th at p. 1103.)
     The concurring opinion rejects this proposition, arguing that neither *Manufacturers Life* nor *Moradi-Shalal* preclude UCL claims based on UIPA violations. However, were that the case, in *Manufacturers Life* we would not have limited the grounds for the UCL cause of action to the plaintiff's Cartwright Act claims. Our exclusion of the UIPA claims from the analysis was no oversight. (*Manufacturers Life*, *supra*, 10 Cal.4th at pp. 283-284.) And in *Moradi-Shalal*, we identified administrative remedies and traditional common law actions as viable avenues for restraining unfair insurance practices, without mentioning the UCL. (*Moradi-Shalal*, *supra*, 46 Cal.3d at pp. 304-305.) We approved the reasoning of Justice Richardson's *Royal Globe* dissent, holding that the UIPA contemplates only administrative sanctions for practices amounting to a pattern of misconduct. (*Moradi-Shalal*, at pp. 295-296, 303-304.) It is clear from *Moradi-Shalal* that when the UIPA was enacted, "the Legislature . . . considered a situation and concluded no action should lie" on behalf of private parties, and therefore "courts may not override that determination" by entertaining UCL actions predicated on UIPA violations. (*Cel-Tech*, *supra*, 20 Cal.4th at p. 182.)

17

common law fraud and bad faith actions. (*Moradi-Shalal*, *supra*, 46 Cal.3d at pp. 304-305.) Thus, our cases do not support the *Textron* court's view that UCL actions may not be brought for "the type of activities covered by the UIPA." (*Textron*, *supra*, 118 Cal.App.4th at p. 1070.)

As noted in *State Farm*, bad faith insurance practices may qualify as any of the three statutory forms of unfair competition. (*State Farm*, *supra*, 45 Cal.App.4th at p. 1107.) They are *unlawful*; the insurer's obligation to act fairly and in good faith to meet its contractual responsibilities is imposed by the common law, as well as by statute. (*Gruenberg v. Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574; *Benavides v. State Farm General Ins. Co.* (2006) 136 Cal.App.4th 1241, 1249.) They are *unfair* to the insured; unfairness lies at the heart of a bad faith cause of action.[9] (*Gruenberg*, at pp. 573-574; *State Farm*, *supra*, 45 Cal.App.4th at pp. 1104-1105.) They may also qualify as *fraudulent* business practices. Under the UCL, it is necessary only to show that the plaintiff was likely to be deceived, and suffered economic injury as a result of the deception. (*Kwikset Corp. v*

---

[9]     The standard for determining what business acts or practices are "unfair" in consumer actions under the UCL is currently unsettled. (See *Aleksick v. 7-Eleven, Inc.* (2012) 205 Cal.App.4th 1176, 1192 [public policy that is predicate for action must be tethered to specific constitutional, statutory or regulatory provisions]; *Ticconi v. Blue Shield of California Life & Health Ins. Co.* (2008) 160 Cal.App.4th 528, 539 [applying balancing test, but also examining whether practice offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers]; *Camacho v. Automobile Club of Southern California* (2006) 142 Cal.App.4th 1394, 1403 [consumer injury must be substantial, and neither outweighed by countervailing benefits nor avoidable by consumers]; *Progressive West Ins. Co. v. Superior Court* (2005) 135 Cal.App.4th 263, 285 [impact of the act or practice on victim is balanced against reasons, justifications and motives of the alleged wrongdoer].) The parties here do not address this question, nor do we.

18

*Superior Court*, *supra*, 51 Cal.4th at p. 322; *In re Tobacco II Cases*, *supra*, 46 Cal.4th at p. 312.)

Textron's criticisms of *State Farm* do not withstand examination. The *Textron* court reasoned that *State Farm* had been undermined by *Cel-Tech*'s disapproval of the "unfairness" standard applied in *State Farm*. (*Textron*, *supra*, 118 Cal.App.4th at pp. 1071-1072.) However, our disapproval of that standard was expressly limited to actions between business competitors alleging anticompetitive practices. We declared: "Nothing we say relates to actions by consumers or by competitors alleging other kinds of violations of the unfair competition law such as 'fraudulent' or 'unlawful' business practices or 'unfair, deceptive, untrue or misleading advertising.' " (*Cel-Tech*, *supra*, 20 Cal.4th at p. 187, fn. 12.) Therefore, for purposes of consumer actions, *Cel-Tech* did not disapprove the unfairness test set out in *State Farm*. Furthermore, any implied disapproval on that point would have had no effect on the *State Farm* court's ruling that common law bad faith claims provide a viable basis for a UCL action.

The *Textron* court relied on *Safeco*, *supra*, 216 Cal.App.3d at page 1494, for the proposition that the UCL " 'provides no toehold for scaling the barrier of *Moradi-Shalal*.' " (*Textron*, *supra*, 118 Cal.App.4th at p. 1070; and see *id*. p. 1072.) *Safeco*, however, was a third party action in which the plaintiff had no common law claim against the insurer. Moreover, in *Stop Youth Addiction* we noted that the *Safeco* line of cases "stand[s] at most for the proposition the UCL cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law." (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 566.) Because *Moradi-Shalal* barred only claims brought under section 790.03, and expressly allowed first party bad faith actions, it preserved the gist of first party UCL claims based on allegations of bad faith. *Moradi-Shalal* imposed a formidable barrier, but not an insurmountable one.

19

*Textron* distinguished *Manufacturers Life* and *Quelimane* on the ground that those UCL claims rested on Cartwright Act violations. (*Textron*, *supra*, 118 Cal.App.4th at p. 1072.) However, nothing in *Manufacturers Life* or *Quelimane* suggests the Cartwright Act is the only avenue for asserting a UCL claim against an insurer. "In *Manufacturers Life* . . . we explained that *Moradi-Shalal* was not meant to impose sweeping limitations on private . . . unfair competition actions." (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 565.) *Manufacturers Life* stands for the proposition that a cause of action neither barred by *Moradi-Shalal* nor absolutely precluded by other law may serve as the basis for a UCL claim. (*Manufacturers Life*, *supra*, 10 Cal.4th at p. 284; see also *Cel-Tech*, *supra*, 20 Cal.4th at pp. 182-183.) *Textron*'s holding that *Moradi-Shalal* precludes UCL causes of action based on allegations of bad faith claims handling practices is contrary to the reasoning of *Manufacturers Life*, *Stop Youth Addiction*, and *Cel-Tech*.

As the *State Farm* court observed, *Moradi-Shalal* was concerned with the adverse effects of recognizing an implied right of action for *damages* under section 790.03, whereas UCL remedies are limited in scope, generally extending only to injunctive relief and restitution.[10] (*State Farm*, *supra*, 45 Cal.App.4th at

---

[10]     California Capital objects that neither restitution nor an injunction is a feasible remedy in a bad faith claims handling case. It argues that it would be improper to award a plaintiff both compensatory damages for breach of the insurance contract and restitution of premiums paid. (See *Alder v. Drudis* (1947) 30 Cal.2d 372, 383.) The trial court, however, has discretion to withhold restitutionary relief if equity so requires. (*Cortez v. Purolator Air Filtration Products Co.*, *supra*, 23 Cal.4th at p. 180.) California Capital also contends it would be problematic to formulate and enforce an injunction in such cases. This argument is speculative and premature. Depending on proof of the nature and extent of the insurer's claims handling practices, the trial court must determine whether injunctive relief would be appropriate. (See *Venice Town Council, Inc. v.*

*(Footnote continued on next page.)*

20

pp. 1108-1110.)  A UCL claim does not duplicate the contract and tort causes of action involved in bad faith litigation, where damages are central.  (See *Korea Supply Co. v. Lockheed Martin Corp.*, *supra*, 29 Cal.4th at p. 1150.)

Indeed, since *State Farm* was decided the scope of the UCL has been further restricted by the passage of Proposition 64 in 2004.  Private plaintiffs must demonstrate economic injury caused by the alleged unfair competition, and may not represent the interests of others without meeting the requirements for a class action.  (*Kwikset Corp. v. Superior Court*, *supra*, 51 Cal.4th at p. 326; *Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 980.)  Thus, there is additional support for *State Farm*'s conclusion that allowing UCL claims in common law bad faith cases is unlikely to resurrect the problems caused by *Royal Globe*.  (*State Farm*, *supra*, 45 Cal.App.4th at p. 1110.)  We note as well that those problems stemmed from the recognition of *third party* claims under section 790.03, not from claims by insureds against their insurers.

For all the above reasons, we disapprove *Textron Financial Corp. v. National Union Fire Ins. Co.*, *supra*, 118 Cal.App.4th 1061, to the extent it is inconsistent with this opinion.  Our ruling does not affect the opinions in third party cases such as *Industrial Indemnity*, *supra*, 209 Cal.App.3d 1093, and *Safeco*, *supra*, 216 Cal.App.3d 1491.  In *Moradi-Shalal*, we identified numerous adverse consequences of third party bad faith claims, including proliferating litigation, unwarranted settlement demands, escalating insurance costs, conflicts of interest, practical difficulties with the scope and nature of the third party cause of action,

---

*(Footnote continued from previous page.)*

*City of Los Angeles* (1996) 47 Cal.App.4th 1547, 1562 ["a demurrer tests the sufficiency of the factual allegations of the complaint rather than the relief suggested in the prayer"].)

21

and potential constitutional issues.  (*Moradi-Shalal*, *supra*, 46 Cal.3d at pp. 301-302.)  Whether similar concerns weigh against recognizing a right of third parties to pursue UCL claims is a matter beyond the scope of this case.

Our resolution of the conflict between *State Farm* and *Textron* disposes of the bulk of California Capital's arguments.  With regard to Zhang's particular claim, California Capital asserts that no statutory or decisional law other than the UIPA imposes liability on insurers for the conduct alleged in Zhang's UCL cause of action, which California Capital characterizes as "a general practice of underpaying fire claims."  Reasonably interpreted in the context of the complaint as a whole, however (*Quelimane*, *supra*, 19 Cal.4th at p. 38), the UCL cause of action seeks to recover for California Capital's allegedly false advertising as it affected Zhang.  California Capital acknowledges that in *Quelimane*, at pages 54-55, we upheld a UCL cause of action based on a claim of false advertising.  It attempts to distinguish *Quelimane* on the basis that the false claim there involved a promise to issue insurance, not the underpayment of a claim.  This distinction is insignificant, given our conclusion that UCL claims may be based on claims handling practices, as long as they do not rest exclusively on UIPA violations.

California Capital contends the litigation of Zhang's UCL cause of action will be unmanageable, requiring the examination of its claims handling practices in thousands of cases.  However, a UCL claim may be based on a single instance of unfair business practice.  (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 570; *United Farm Workers of America v. Dutra Farms* (2000) 83 Cal.App.4th 1146, 1163.)  Were Zhang to attempt to recover on behalf of other insureds, she would be required to certify a class action.  (*Arias v. Superior Court*, *supra*, 46 Cal.4th at p. 980.)  Furthermore, we are not concerned at the pleading stage with how Zhang might go about proving her claim.  As we have noted in other UCL cases, the possible difficulty of proving the plaintiff's allegations is not a relevant

22

consideration on review of a demurrer ruling. (*Quelimane*, *supra*, 19 Cal.4th at p. 47; *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 213-214.)

Finally, on demurrer review we may consider the sufficiency of the plaintiff's allegations to state a cause of action under any legal theory. (*Quelimane*, *supra*, 19 Cal.4th at p. 38.) In light of our approval of the *State Farm* analysis, we observe that a UCL cause of action is supported by Zhang's bad faith claims, as well as her false advertising claim. She alleges a litany of bad faith practices by California Capital, including unreasonable delays causing deterioration of her property; withholding of policy benefits; refusal to consider cost estimates; misinforming her as to the right to an appraisal; and falsely telling her mortgage holder that she did not intend to repair the property, resulting in foreclosure proceedings. These allegations are sufficient to support a claim of unlawful business practices. (See *Gruenberg v. Aetna Ins. Co.*, *supra*, 9 Cal.3d 566, 574; *Benavides v. State Farm General Ins. Co.*, *supra*, 136 Cal.App.4th 1241, 1249.)[11]

E. *Summary*

When the Legislature enacted the UIPA, it contemplated only administrative enforcement by the Insurance Commissioner. (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 300.) Private UIPA actions are absolutely barred; a litigant may not rely on the proscriptions of section 790.03 as the basis for a UCL claim. (*Cel-Tech*, *supra*, 20 Cal.4th at pp. 182-183; *Manufacturers Life*, *supra*, 10 Cal.4th at pp. 283-284; *Moradi-Shalal*, at p. 304.) However, when insurers engage in

---

[11] California Capital's alleged conduct might also be "unfair" for UCL purposes. (Bus. & Prof. Code, § 17200.) Because the standard for "unfairness" is unsettled, however (see fn. 9, *ante*), we express no view on this point.

23

conduct that violates both the UIPA and obligations imposed by other statutes or the common law, a UCL action may lie. The Legislature did not intend the UIPA to operate as a shield against any civil liability. (*Moradi-Shalal*, at pp. 304-305.)

## III.  DISPOSITION

We affirm the Court of Appeal's judgment.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**CHIN, J.**

**CONCURRING OPINION BY WERDEGAR, J.**


Yanting Zhang has pleaded conduct by California Capital Insurance Company that contravenes long-standing common law prohibitions against bad faith insurance practices and false advertising. Under settled precedent, such common law breaches may provide the predicate for claims under the unfair competition law (UCL). (Bus. & Prof. Code, § 17200 et seq.; *Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 209-214; *State Farm Fire & Casualty Co. v. Superior Court* (1996) 45 Cal.App.4th 1093, 1105.) That such conduct may *also* be statutorily proscribed by the unfair insurance practices act (Act) (Ins. Code, § 790 et seq.)[1] does not foreclose Zhang's UCL claim; the Legislature, in enacting protections for insureds, did not thereby intend to make it more difficult for those same insureds to obtain relief. I thus concur fully in the majority opinion's conclusion that the Court of Appeal was right to allow this case to proceed and the trial court wrong to sustain a demurrer.

I write separately, however, because the majority goes further and asserts no UCL claim can ever be based on violations of the Act. (Maj. opn., *ante*, at p. 17, fn. 8 & p. 23.) Given Zhang's conscious decision not to predicate a UCL claim directly on such transgressions, this assertion is unnecessary dictum.

---

[1]     All further unlabeled statutory references are to the Insurance Code.

1

Moreover, it is wrong: it misreads our own precedent and imposes on the UCL limits never contemplated by the Legislature.

Our understanding of this point must begin with *Royal Globe Ins. Co. v. Superior Court* (1979) 23 Cal.3d 880 (*Royal Globe*). In *Royal Globe*, a slip-and-fall plaintiff sued both a supermarket and the supermarket's insurer. Her claim against the insurer alleged it had breached its statutory duty under a provision of the Act by failing to "attempt in good faith to effectuate a prompt, fair, and equitable settlement[]" of a claim where "liability ha[d] become reasonably clear." (§ 790.03, subd. (h)(5).) Interpreting the text of the Act, a 4 to 3 majority rejected the insurer's argument that only the Insurance Commissioner could enforce its provisions and concluded instead that "the [A]ct affords a private party, including a third party claimant, a right to sue an insurer for violating subdivision (h)." (*Royal Globe*, at p. 891.)

Nine years later, *Moradi-Shalal v. Fireman's Fund Ins. Co.* (1988) 46 Cal.3d 287 (*Moradi-Shalal*) overruled *Royal Globe*. The *Moradi-Shalal* majority embraced as "irrefutable" the position of the *Royal Globe* dissent: "Neither section 790.03 nor section 790.09 was intended to create a private civil cause of action against an insurer that commits one of the various acts listed in section 790.03, subdivision (h)." (*Moradi-Shalal*, at p. 304.) But *Moradi-Shalal* did no more than that. To forestall any implication of "an invitation to the insurance industry to commit the unfair practices proscribed by the Insurance Code" (*ibid.*), the majority stressed the continuing availability of both Insurance Commissioner sanctions for violations of the Act and suits for fraud, bad faith, and the like as

2

checks on insurers (*id.* at pp. 304-305).**2**  Whether private suits *indirectly* predicated on the requirements of the Act might also be available to deter misconduct was not addressed; *Moradi-Shalal* confined itself to succinctly repudiating *Royal Globe*'s discernment of a private right of action in the four corners of the Act itself.  (*Moradi-Shalal*, at p. 292.)**3**

In the wake of *Moradi-Shalal*, numerous plaintiffs sought to recoup the same compensatory and punitive damages previously afforded under a *Royal Globe* claim by suing under the UCL.  The Courts of Appeal uniformly rejected these suits, typically without detailing their reasoning.  (See, e.g., *Maler v. Superior Court* (1990) 220 Cal.App.3d 1592, 1597-1598; *Safeco Ins. Co. v. Superior Court* (1990) 216 Cal.App.3d 1491, 1494; *Industrial Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1093, 1097.)  In retrospect, it is apparent these decisions were entirely correct, albeit not because *Moradi-Shalal* necessarily foreclosed suits under the UCL.  Rather, in 1992 we made clear what previously had been uncertain, that damages are unavailable under the UCL.  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266.)  Thus, the UCL could not, and cannot, serve as a substitute for a *Royal Globe* private action seeking damages for violations of the Act.

---

**2**     While it is true, as the majority notes, that we did not list the UCL by name, our description of the remedies available as alternatives to a direct action under the Act did not purport to be exhaustive.

**3**     In the course of arriving at its conclusion, *Moradi-Shalal* noted legislative history describing the Act as "contemplating only *administrative* enforcement by the Insurance Commissioner" (*Moradi-Shalal*, *supra*, 46 Cal.3d at p. 300), but we drew from this "somewhat inconclusive" history (*id.* at p. 301) only a further reason to doubt *Royal Globe*'s holding that the Legislature had intended to create in the Act itself a private civil remedy, not a global conclusion that the Legislature had intended to bar use of the Act as a predicate for claims under existing laws.

3

Twice in the first half of the 1990s we had occasion to discuss these post-*Moradi-Shalal* Court of Appeal decisions. In *Rubin v. Green* (1993) 4 Cal.4th 1187, 1202, we considered whether a party could sue under the UCL for conduct immunized from suit by Civil Code section 47, subdivision (b), and concluded he could not. (*Rubin*, at pp. 1200-1203.) *Rubin* foreshadowed (and indeed was relied upon by) our later decision in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 182-184, which clarified that UCL suits are precluded when the Legislature immunizes particular conduct from suit. In *Rubin*, we cited by analogy the Court of Appeal decisions rejecting UCL actions in the wake of *Moradi-Shalal*. In doing so, we simply assumed, but had no occasion to decide, that the situation they dealt with was analogous—that *Moradi-Shalal* involved an "absolute barrier[] to relief" just as *Rubin* itself did. (*Rubin*, at p. 1201.)

Two years later, in *Manufacturers Life Ins. Co. v. Superior Court* (1995) 10 Cal.4th 257, an antitrust case, we considered and rejected the argument that the Act "supersede[s] or displace[s] insurance-industry-related claims" under the Cartwright Act and the UCL. (*Manufacturers Life*, at p. 263.) Instead, "the Legislature intended that rights and remedies available under those statutes were to be cumulative to the powers the Legislature granted to the Insurance Commissioner" to enforce the Act. (*Manufacturers Life*, at p. 263.) *Moradi-Shalal* stood as no bar; because "[w]hether statutory causes of action under the Cartwright Act and the UC[L] may be stated against an insurance company was not an issue" there, *Moradi-Shalal*'s repudiation of a right of action under the Act itself did not preclude a right of action under the UCL. (*Manufacturers Life*, at p. 280.)

The Court of Appeal in *Manufacturers Life* had distinguished the earlier Court of Appeal decisions rejecting damages suits under the UCL for violations of

4

the Act by concluding that, even if one could not predicate a UCL claim on violation of the Act, one could still predicate a UCL claim on violations of the Cartwright Act, which was not superseded by the Act. We approved that distinction, agreeing that a UCL claim could be based on Cartwright Act violations. (*Manufacturers Life*, *supra*, 10 Cal.4th at pp. 267, 283-284.) Notably, however, we had no occasion to decide definitively whether the distinction was necessary, that is, whether in fact one could not base a UCL claim on violations of the Act. Nor did *Rubin v. Green*, *supra*, 4 Cal.4th 1187, or any Court of Appeal decision have cause to consider whether *Moradi-Shalal* held not only that the Legislature failed to create a private right of action in the Act *itself*, but also that the Legislature intended to preclude a private right of action, even indirectly, under other statutes.[4] This omission is understandable for two reasons: it was not material to the issues raised in these cases, and the distinction between declining to create a right of action and precluding a right of action was not one we highlighted as material to the UCL until several years later, in *Stop Youth Addiction, Inc. v. Lucky Stores, Inc.* (1998) 17 Cal.4th 553 (*Stop Youth Addiction*) and *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th 163.

To be sure, as early as 1983 it had been established that whether a private cause of action could be implied under a predicate statute was immaterial to the availability of a UCL claim because the UCL allowed redress of unlawful business practices whether or not the underlying statute was privately enforceable.

---

[4]     As discussed *ante* at pages 2-3, in overruling *Royal Globe*, *supra*, 23 Cal.3d 880, *Moradi-Shalal*, *supra*, 46 Cal.3d 287, repudiated *Royal Globe*'s conclusion that the Legislature created a private right of action in the Act itself, but did not announce that the Legislature had any such further, broader intent.

(*Committee on Children's Television, Inc. v. General Foods Corp.*, *supra*, 35 Cal.3d at pp. 210-211.) In *Stop Youth Addiction*, however, we directly confronted the contention that the omission of a private right of action to enforce particular statutory requirements sufficed to preclude suit under the UCL. We rejected the argument that *Rubin v. Green*, *supra*, 4 Cal.4th 1187, *Manufacturers Life*, *supra*, 10 Cal.4th 257, and the post-*Moradi-Shalal* Court of Appeal cases established that point. Instead, we confined them to supporting "the proposition the UCL cannot be used to state a cause of action the gist of which is absolutely barred under some other principle of law" (*Stop Youth Addiction*, *supra*, 17 Cal.4th at p. 566), without, of course, revisiting whether *Moradi-Shalal*, *supra*, 46 Cal.3d 287, actually contained such an absolute bar. And because nothing in the history surrounding the statute there sued upon, Penal Code section 308, indicated the Legislature had intended to foreclose suit under other statutes, we concluded a UCL claim could go forward. (*Stop Youth Addiction*, at pp. 573-574.)

To similar effect in *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th 163, we offered our clearest articulation of the governing principle: "A plaintiff may thus not 'plead around' an 'absolute bar to relief' simply 'by recasting the cause of action as one for unfair competition.' (*Manufacturers Life Ins. Co. v. Superior Court*[, *supra*,] 10 Cal.4th [at p.] 283.) The rule does not, however, prohibit an action under the unfair competition law merely because some other statute on the subject does not, itself, provide for the action or prohibit the challenged conduct. To forestall an action under the unfair competition law, another provision must actually 'bar' the action or clearly permit the conduct. There is a difference between (1) not making an activity unlawful, and (2) making that activity lawful." (*Cel-Tech*, at pp. 182-183.)

Even legislative repudiation of a private right of action under a statute need not foreclose a UCL claim based on violations of that statute. As we unanimously

6

explain in another case today, a UCL claim may be based on a federal statute notwithstanding the congressional repeal of a previously existing private right of action under that statute. (*Rose v. Bank of America, N.A.* (Aug. 1, 2013, S199074) __ Cal.4th __, ___ [pp. 1, 7-8].)

Collectively, these cases stand for the proposition that a UCL cause of action will not lie to enforce violation of a particular statute only if the Legislature affirmatively intended to preclude such indirect enforcement. It is not enough that the Legislature in drafting the predicate statute simply failed to "provide for the action." (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th at p. 183.)

From these precedents, it is apparent that UCL "unlawful" prong claims predicated on violations of the Act are, in fact, permissible. First, *Moradi-Shalal*, *supra*, 46 Cal.3d 287, held only that the Legislature did not create a right of action in the Act, not that it intended to foreclose *any* private right of action. Second, it follows from *Stop Youth Addiction*, *supra*, 17 Cal.4th at pages 561-567, 573-574, and *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, *supra*, 20 Cal.4th at pages 182-184, that such an omission is insufficient to preclude suit. Third, any contrary language in our cases suggesting a broader reading of *Moradi-Shalal* was dicta that failed to account for the distinction later drawn in *Stop Youth Addiction* and other cases between failing to create a right of action and foreclosing one. (See *Manufacturers Life Ins. Co. v. Superior Court*, *supra*, 10 Cal.4th at pp. 266, 283-284; *Rubin v. Green*, *supra*, 4 Cal.4th at pp. 1201-1202.) And fourth, the concern expressed in Court of Appeal cases decided in the immediate aftermath of *Moradi-Shalal* that plaintiffs should not be able to resurrect a *Royal Globe* damages action is addressed by our subsequent conclusion that damages are unavailable under the UCL. (*Bank of the West v. Superior Court*, *supra*, 2 Cal.4th at p. 1266.) Thus, to allow a UCL "unlawful" claim predicated

7

on a violation of the Act would not contravene *Moradi-Shalal*; *Moradi-Shalal* still bars a direct action and compensatory and punitive damages, while the UCL permits only the far more limited relief of an injunction and restitution.

**WERDEGAR, J.**

**I CONCUR:**

**LIU, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Zhang v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 178 Cal.app.4th 1081
**Rehearing Granted**

_____

**Opinion No.** S178542
**Date Filed:** August 1, 2013

_____

**Court:** Superior
**County:** San Bernardino
**Judge:** Joseph R. Brisco

_____

**Counsel:**

Viau & Kwasniewski, Gary K. Kwasniewski and Jeanette L. Viau for Petitioner.

Steven W. Murray for Italian Marble & Tile as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Horvitz & Levy, Peter Abrahams, Mitchell C. Tilner; Grant, Genovese & Baratta, Lance D. Orloff and Aaron J. Mortensen for Real Party in Interest.

Lewis Brisbois Bisgaard & Smith and Raul L. Martinez for American Insurance Association as Amicus Curiae on behalf of Real Party in Interest.

Garrett & Tully, Ryan C. Squire and Alexander Levy for California Land Title Association as Amicus Curiae on behalf of Real Party in Interest.

Michelman & Robinson and William L. Gausewitz for the Association of California Insurance Companies, the Pacific Association of Domestic Insurance Companies and the Personal Insurance Federation of California as Amici Curiae on behalf of Respondent and Real Party in Interest.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Gary K. Kwasniewski
Viau & Kwasniewski
601 West Fifth Street, Eighth Floor
Los Angeles, CA 90071-2004
(213) 225-5855

Peter Abrahams
Horvitz & Levy
15760 Ventura Boulevard, 18th Floor
Encino, CA 91436-3000
(818) 995-0800