Filed 9/30/24; certified for publication 10/22/24 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE ex rel. MARA W. ELLIOTT, as San Diego City Attorney, etc., | D081262 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2021-00027298-CU-BT-CTL) |
| v. | |
| KAISER FOUNDATION HEALTH PLAN, INC., | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Gregory W. Pollack, Judge. Reversed and remanded with directions.

Mara W. Elliott, City Attorney, Mark Ankcorn, Chief Deputy City Attorney, Kevin B. King, Deputy City Attorney; Bradley Bernstein Sands, Erin Bernstein and Gina Elliott for Plaintiff and Appellant.

Rob Bonta, Attorney General, Renu R. George, Assistant Attorney General, David A. Jones and Sean McGuire, Deputy Attorneys General, for the State as Amicus Curiae on behalf of Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, John T. Brooks, Moe Keshavarzi, Samuel D. Duimovich and Matthew G. Halgren for Defendant and Respondent.

Manatt, Phelps & Phillips, Gregory N. Pimstone, Joanna S. McCallum and Marina Shvarts for California Association of Health Plans as Amicus Curiae on behalf of Defendant and Respondent.

Rob Bonta, Attorney General, Renu R. George, Assistant Attorney General, Karli Eisenberg, Ari J. Dybnis and Martine N. D'Agostino, Deputy Attorneys General, for Department of Managed Health Care as Amicus Curiae.

The plaintiff, the People of the State of California, acting by and through Mara W. Elliott, the San Diego City Attorney (People), appeal a judgment entered in favor of the defendant, Kaiser Foundation Health Plan, Inc. (Kaiser), in their action against Kaiser alleging violations of the unfair competition law (UCL) (Bus. & Prof. Code, § 17200 et seq.) and false advertising law (FAL) (*id.*, § 17500 et seq.) based on, among other things, inaccuracies in Kaiser's health plan provider directories (PD or PDs). In particular, the People alleged that Kaiser failed to maintain and update accurate PDs for its health plans, as required by Health and Safety Code[1] section 1367.27. The trial court granted Kaiser's motion for summary judgment after exercising its discretion to abstain from adjudicating the action.

We conclude that the trial court abused its discretion by applying the doctrine of judicial abstention. Accordingly, we reverse the judgment and remand the matter with directions to the court.

---

[1] All further statutory references are to the Health and Safety Code unless otherwise specified.

FACTUAL AND PROCEDURAL BACKGROUND

In 2021, the People filed a complaint against Kaiser. The complaint alleged that Kaiser sells and provides health insurance to individuals in California. Citing section 1367.27, the complaint further alleged that health insurance companies are required to publish, maintain, and update accurate PDs, setting forth information regarding a health plan's providers (e.g., location, contact information, specialty, etc.). It acknowledged that the California Department of Managed Health Care (DMHC), California Department of Health Care Services (DHCS), and California Department of Insurance (DOI) regulate health insurance in California.

The complaint alleged that Kaiser had failed to maintain and update accurate PDs for its health plans and had not corrected inaccurate PD data after learning of the inaccuracies through its annual timely access surveys. It also alleged that Kaiser had failed to prominently display its contact information so that consumers and providers could report PD inaccuracies. It further alleged that Kaiser's failure to provide accurate PDs was unlawful and harmed both consumers and its competitors.

The complaint alleged two causes of action: (1) a UCL claim; and (2) an FAL claim. The UCL cause of action incorporated the complaint's preceding allegations and specifically alleged that Kaiser had engaged in unlawful, unfair, and fraudulent business practices by violating California and federal law and employing business practices likely to deceive the public. Specifically, it alleged that Kaiser had violated the following state and federal laws and regulations:

> "a. Affordable Care Act guarantees of access to 'an up-to-date, accurate, and complete [PD].' (45 C.F.R. § 156.230(b)(2).)

3

"b.  The Federal Mental Health Parity and Addiction Equity Act . . . .  (45 C.F.R. § 146.136(c)(4)(i).)

"c.  California statutory requirements that [Affordable Care Act] plan [PDs] be accurate.  ( . . . § 1367.27.)

"d.  California statutory requirements related to the reporting of data related to [PD] accuracy.  ( . . . § 1367.27.)

"e.  California statutory requirements related to prominent on-line contact information for consumers to report [PD] errors.  ( . . . § 1367.27.)

"f.  California statutory requirements related to the searchability of network providers on-line.  ( . . . § 1367.27.)

"g.  California statutory requirements and regulations related to the reporting of timely access and physician data.  ( . . . §§ 1367.03, 1367.035.)

"h.  Federal regulations requiring Medicaid [PDs] be accurate and regularly updated.  (42 C.F.R. § 438.10(h).)

"i.  False [a]dvertising of products and services.  (Cal. Bus. & Prof. Code[,] § 17500.)

"j.  [Kaiser's] conduct is also unlawful because it constitutes a tort of fraudulent inducement to contract."

The FAL cause of action incorporated the complaint's preceding allegations and specifically alleged that Kaiser violated the FAL (i.e., Bus. & Prof. Code, § 17500) "by publicly disseminating false and misleading [PDs] through which [it] hope[d] to obtain customers."

The complaint sought the following relief:  (1) civil penalties pursuant to Business and Professions Code sections 17206, 17206.1, subdivision (a)(1), and 17536; (2) restitution; and (3) provisional and final remedies against Kaiser, including, without limitation, "an injunction prohibiting [Kaiser] from continuing [its] unlawful, unfair, and fraudulent activities, and discontinue [its] false and misleading advertising."

4

Kaiser filed a motion for summary judgment. In support of its motion, Kaiser argued that there were no triable issues of material fact and it was entitled to judgment as a matter of law because the trial court should abstain from adjudicating the action. It submitted a separate statement of undisputed material facts, along with various declarations and exhibits and a request for judicial notice, in support of its motion.

In their opposition papers, the People argued that the court should not abstain from adjudicating their action because, among other things, Kaiser's violations of section 1367.27 and other statutes provide predicates for their UCL cause of action and the UCL contemplates co-enforcement by the People and administrative agencies. In reply, Kaiser reasserted its original arguments in support of its motion.

The trial court, after hearing arguments of counsel, issued a minute order granting Kaiser's motion for summary judgment based solely on the exercise of its discretion to abstain from adjudicating the People's action. The court entered a judgment in favor of Kaiser. The People timely filed a notice of appeal challenging the judgment.

The Attorney General for the State of California has filed an amicus curiae brief in support of the People. The DMHC has filed an amicus curiae brief in support of neither party, and the California Association of Health Plans has filed an amicus curiae brief in support of Kaiser.[2] The People and Kaiser have filed answers to the amicus curiae briefs.[3]

---

[2] The People filed a request for judicial notice of an amicus curiae brief filed by the DMHC in another case (i.e., in *Futterman v. Kaiser Foundation Health Plan, Inc.* (A155946), filed on February 25, 2020). Kaiser opposed their request. We issued an order stating that we would consider the People's request for judicial notice concurrently with the appeal. Because the DMHC has filed an amicus curiae brief in this case, its amicus curiae brief filed in

5

DISCUSSION

Before discussing the trial court's judicial abstention ruling, we begin with an overview of the relevant statutes and regulatory agencies charged with their enforcement.

I

*The Knox-Keene Act and Section 1367.27 Generally*

"In 1975, the Legislature enacted the Knox-Keene Act, which provides the legal framework for the regulation of California's individual and group health care [service] plans . . . ." (*Rea v. Blue Shield of California* (2014) 226 Cal.App.4th 1209, 1215; see also § 1340 et seq.) Effective January 1, 2016, the Legislature enacted section 1367.27, which requires health care service plans to, among other things, maintain and update accurate PDs. (Stats. 2015, Reg. Sess. 2014–2015, ch. 649, § 2.)

Section 1367.27, subdivision (a) provides: "[A] health care service plan shall publish and maintain a [PD] with information on contracting providers that deliver health care services to the plan's enrollees, including those that accept new patients. A [PD] shall not list or include information on a

---

*Futterman* is unnecessary and therefore we deny the People's request to take judicial notice of that brief. The reply in support will not be considered.

3     The People filed a notice of related cases in the trial court, stating that they had filed similar actions against Molina Healthcare of California (Molina) (case No. 37-2021-00027295-CU-BT-CTL) and Health Net LLC, et al. (Health Net) (case No. 37-2021-00027383-CU-BT-CTL). All three cases were assigned to the same trial judge, who then granted the defendants' motions for summary judgment on the same ground of judicial abstention. The People have filed notices of appeal also challenging the judgments entered in favor of Molina and Health Net. We issued an order granting the parties' unopposed motion for the appeals in the instant case (D081262) and the People's related cases against Molina (D081138) and Health Net (D081192) to be heard by the same panel.

6

provider that is not currently under contract with the plan." Health plans must make online PDs available on their websites to the public, potential enrollees, enrollees, and providers. (*Id.*, subd. (c)(1).) Health plans must also allow those parties to request printed copies of their PDs. (*Id.*, subd. (d)(1).) Health plans must update their printed PDs at least quarterly, or more frequently, if required by federal law. (*Id.*, subd. (d)(2).)

> Section 1367.27, subdivision (e)(1) provides:

>> "The plan shall update the online [PD], at least weekly, or more frequently, if required by federal law, when informed of and upon confirmation by the plan of any of the following:

>> "(A) A contracting provider is no longer accepting new patients for that product, or an individual provider within a provider group is no longer accepting new patients.

>> "(B) A provider is no longer under contract for a particular plan product.

>> "(C) A provider's practice location or other information required under subdivision (h) or (i) has changed.

>> "(D) Upon completion of the investigation described in subdivision (o), a change is necessary based on an enrollee complaint that a provider was not accepting new patients, was otherwise not available, or whose contact information was listed incorrectly.

>> "(E) Any other information that affects the content or accuracy of the [PD]."

Similarly, section 1367.27, subdivision (e)(2) provides that a plan shall delete a provider from its PD on confirmation that: "(A) A provider has retired or otherwise ceased to practice[;] [¶] (B) A provider or provider group is no longer under contract with the plan for any reason[; or] [¶] (C) The contracting provider group has informed the plan that the provider is no longer associated with the provider group and is no longer under contract

7

with the plan." Section 1367.27 also requires that PDs "include both an email address and a telephone number for members of the public and providers to notify the plan if the [PD] information appears to be inaccurate. This information shall be disclosed prominently in the [PD] and on the plan's Internet Web site." (*Id.*, subd. (f).) Section 1367.27, subdivision (j)(1) provides: "The contract between the plan and a provider shall include a requirement that the provider inform the plan within five business days when either of the following occurs: [¶] (A) The provider is not accepting new patients[; or] [¶] (B) If the provider had previously not accepted new patients, the provider is currently accepting new patients."

Importantly, section 1367.27, subdivision (l)(1) provides: "A plan shall take appropriate steps to ensure the accuracy of the information concerning each provider listed in the plan's [PD] in accordance with this section, and shall, at least annually, review and update the entire [PD] for each product offered." Section 1367.27, subdivision (o)(1) provides: "Whenever a health care service plan receives a report indicating that information listed in its [PD] is inaccurate, the plan shall promptly investigate the reported inaccuracy and, no later than 30 business days following receipt of the report, either verify the accuracy of the information or update the information in its [PD], as applicable." Furthermore, "[i]f changes to a plan's [PD] are required as a result of the plan's investigation, the changes to the online [PD] shall be made no later than the next scheduled weekly update, or the update immediately following that update, or sooner if required by federal law or regulations. For printed [PDs], the change shall be made no later than the next required update, or sooner if required by federal law or regulations." (*Id.*, subd. (o)(2)(C).)

8

Section 1367.27 requires the DMHC to "develop uniform [PD] standards to permit consistency," and after those PD standards are developed, "a plan shall use the standards developed by [the DMHC] for each product offered by the plan." (§ 1367.27, subd. (k)(1), (3).) Section 1367.27 also requires health plans to "establish policies and procedures with regard to the regular updating of its [PDs], including the weekly, quarterly, and annual updates required pursuant to this section, or more frequently, if required by federal law or guidance." (*Id.*, subd. (m).) The plan shall annually submit to the DMHC its policies and procedures regarding regular updating of its PDs for approval by the DMHC. (*Id.*, subd. (m)(1).) In particular, "[t]he plan shall establish and maintain a process for enrollees, potential enrollees, other providers, and the public to identify and report possible inaccurate, incomplete, or misleading information currently listed in the plan's [PD]. This process shall, at a minimum, include a telephone number and a dedicated email address at which the plan will accept these reports, as well as a hyperlink on the plan's [PD] Internet Web site linking to a form where the information can be reported directly to the plan through its Internet Web site." (*Id.*, subd. (m)(3).) Section 1367.27, subdivision (p)(1) authorizes a health plan to "delay payment or reimbursement owed to a provider or provider group . . . if the provider or provider group fails to respond to the plan's attempts to verify the provider's or provider group's information as required by subdivision (l)."

II

*Authority of Regulatory Agencies*

*The DMHC.* Section 1341, subdivision (a) provides that the DMHC "has charge of the execution of the laws of this state relating to health care service plans and the health care service plan business including, but not

9

limited to, those laws directing the [DMHC] to ensure that health care service plans provide enrollees with access to quality health care services and protect and promote the interests of enrollees." The director of the DMHC is "responsible for the performance of all duties, the exercise of all powers and jurisdiction, and the assumption and discharge of all responsibilities vested by law in the [DMHC]." (*Id.*, subd. (c).) The director may "exempt from this chapter [i.e., Health and Safety Code chapter 2.2 regarding health care service plans] any class of persons or plan contracts if the director finds the action to be in the public interest and not detrimental to the protection of subscribers, enrollees, or persons regulated under this chapter . . . ." (§ 1343, subd. (b).) Section 1344, subdivision (a) provides: "The director [of the DMHC] may from time to time adopt, amend, and rescind any rules, forms, and orders that are necessary to carry out the provisions of this chapter . . . . The director may waive any requirement of any rule or form in situations where in the director's discretion that requirement is not necessary in the public interest or for the protection of the public, subscribers, enrollees, or persons or plans subject to this chapter. . . ." Furthermore, "[n]o provision of this chapter imposing any liability applies to any act done or omitted in good faith in conformity with any rule, form, order, or written interpretative opinion of the director, or any opinion of the Attorney General . . . ." (*Id.*, subd. (d).)

The director of the DMHC has the power to, among other things, "[a]ssist, advise, and cooperate with federal, state, and local agencies and officials to protect and promote the interests of plans, subscribers, enrollees, and the public." (§ 1346, subd. (a)(3).) The director of the DMHC has a wide range of enforcement powers, including the suspension or revocation of a health plan's license (§ 1386, subd. (a)), assessment of administrative and

10

civil penalties (§§ 1386, subd. (a), 1387, subd. (a)(1) [civil penalty up to $25,000 per violation to be recovered in civil action], 1393.5, subd. (a) [civil penalty up to $5,000 to be recovered in civil action]), issuance of cease and desist orders (§ 1391, subd. (a)(1)), and bringing (or requesting the Attorney General to bring) an action in superior court for injunctive or other equitable relief, such as restitution (§ 1392, subd. (a)(1)).  (See also *Hambrick v. Healthcare Partners Medical Group, Inc.* (2015) 238 Cal.App.4th 124, 147–148 (*Hambrick*).)  Those remedies are not the exclusive remedies available to the DMHC's director.  (§ 1394.)  In particular, as one court noted, the director of the "DMHC specifically has the authority to prevent unfair competition and false advertising," citing the director's power to discipline plans that have " 'engaged in any conduct that constitutes fraud or dishonest dealing or unfair competition, as defined by [s]ection 17200 of the Business and Professions Code.' "  (*Hambrick*, at pp. 158–159, citing § 1386, subd. (b)(7).)

*Other regulatory agencies.*  In addition to the DMHC's authority to regulate managed health care service plans including Medi-Cal plans (i.e., California's Medicaid plans), the DHCS has authority to regulate Medi-Cal plans through its contractual relationships with those plans.  The DOI has authority to regulate health care services plans that are not licensed by the DMHC.

III

*The UCL and FAL Generally*

The UCL prohibits "unfair competition," which means "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  (Bus. & Prof. Code, § 17200.)  In prohibiting " 'unlawful' " business acts or practices, "the UCL ' "borrows" ' rules set out in

11

other laws and makes violations of those rules independently actionable." (*Zhang v. Superior Court* (2013) 57 Cal.4th 364, 370 (*Zhang*).) "Virtually any law—federal, state or local—can serve as a predicate for a [Business and Professions Code] section 17200 action." (*State Farm Fire & Casualty Co. v. Superior Court* (1998) 45 Cal.App.4th 1093, 1102–1103.) In addition to business practices that are unlawful, "a practice may violate the UCL even if it is not prohibited by another statute. Unfair and fraudulent business practices are alternate grounds for relief." (*Zhang*, at p. 370.)

The FAL prohibits "the dissemination in any advertising media of any 'statement' . . . 'which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.' " (*Committee on Children's Television, Inc. v. General Foods Corp.* (1983) 35 Cal.3d 197, 210, quoting Bus. & Prof. Code, § 17500.) "False advertising under the FAL [also] constitutes a fraudulent business practice under the UCL." (*Hambrick, supra*, 238 Cal.App.4th at p. 154, citing *Zhang, supra*, 57 Cal.4th at p. 370.)

"The UCL and FAL provide for only equitable relief, specifically injunctive relief and restitution." (*Hambrick, supra*, 238 Cal.App.4th at p. 155, citing Bus. & Prof. Code, §§ 17203, 17535.) In *Zhang*, the Supreme Court stated:

> "We have made it clear that 'an action under the UCL "is not an all-purpose substitute for a tort or contract action." [Citation.] Instead, the act provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices. As we have said, the "overarching legislative concern [was] to provide a streamlined procedure for the prevention of ongoing or threatened acts of unfair competition." [Citation.] Because of this objective, the remedies provided are limited.' [Citation.] Accordingly,

12

> while UCL remedies are 'cumulative . . . to the remedies or penalties available under all other laws of this state' [citation], they are narrow in scope." (*Zhang, supra,* 57 Cal.4th at p. 371.)

In addition to injunctive and other equitable relief, such as restitution, that may be sought under Business and Professions Code section 17203, the UCL authorizes public prosecutors to request civil penalties. (*Abbott Laboratories v. Superior Court of Orange County* (2020) 9 Cal.5th 642, 652 (*Abbott Laboratories*).) Business and Professions Code section 17206, subdivision (a) provides: "Any person who engages, has engaged, or proposes to engage in unfair competition shall be liable for a civil penalty not to exceed [$2,500] for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General, by any district attorney, . . . [or] by any city attorney of a city having a population in excess of 750,000 . . . in any court of competent jurisdiction."

IV

*The Trial Court Abused Its Discretion by Abstaining from Adjudicating the People's UCL and FAL Causes of Action*

The People contend that the trial court abused its discretion by applying the doctrine of judicial abstention and declining to adjudicate their UCL and FAL causes of action. We agree.

A

Under the doctrine of judicial abstention, a trial court has discretion to abstain from adjudicating an action if: (1) " ' "granting the requested relief would require a trial court to assume the functions of an administrative agency, or to interfere with the functions of an administrative agency" ' "; (2) the action " ' "involves determining complex economic policy, which is best handled by the Legislature or an administrative agency" ' "; or (3) " ' "granting injunctive relief would be unnecessarily burdensome for the

13

trial court to monitor and enforce given the availability of more effective means of redress." ' " (*Hambrick, supra*, 238 Cal.App.4th at pp. 147–148, quoting *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, 496 (*Arce*); *Blue Cross of California, Inc. v. Superior Court* (2009) 180 Cal.App.4th 138, 157 (*Blue Cross*).) Also, judicial abstention may generally be appropriate only if there is an alternative means of resolving the issues raised in the action. (*Hambrick*, at p. 148; *Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1369 (*Klein*).)

B

In its minute order granting Kaiser's motion for summary judgment, the court described the parties' arguments on the issue of judicial abstention, stating:

> "[Kaiser] contends that [judicial abstention] is warranted because adjudicating [the People's] claims would require the Court to assume the role of a regulator and substitute its policy judgments for those of the Legislature and the [DMHC]. In response to [Kaiser's] contention that [s]ection 1367.27 is a process statute, the [People] replied that [they are] merely enforcing the clear mandates set forth in the statute. At oral argument, the [People] specifically disclaimed [their] desire to pursue 100 percent accuracy and stated that [their] suit was targeting year over year inaccuracies and [Kaiser's] failure to correct them."

On the question of whether it should abstain from adjudicating the People's action, the court stated: "The statute at issue here is . . . section 1367.27," and described certain subdivisions within that statute (most of which we have discussed in Section I above). The court summarized the DMHC's regulatory authority under section 1367.27, stating: "The DMHC discharges its duty to implement section 1367.27 by: issuing All Plan Letters and other interpretive guidance, annually reviewing and approving each plan's proposed compliance procedures, conducting site-surveys and

14

inspections to audit compliance, taking enforcement actions, and promulgating regulations." It noted that under section 1344, subdivision (d), "health plans are immunized from liability for 'any act done or omitted in good faith conformity with any rule, form, order or written interpretive opinion of the director . . . .' [Citation.]"

After discussing *Hambrick* and *Blue Cross*, which as stated above, set forth the factors that a trial court should consider in exercising its discretion whether to abstain from adjudicating an action, the court explained its reasons for abstaining from deciding the People's claim that Kaiser acted unlawfully under the UCL by violating section 1367.27. The court explained:

> "The legislative history for [section 1367.27] indicates that the Legislature opted not to impose an accuracy requirement. [Citation.] It instead chose 'to lay[ ] out the steps a health plan must take to ensure an accurate and up-to-date [PD].' [Citation.] Given the process steps outlined in [s]ection 1367.27[, subdivisions] (j)(1), (m)(3), and (p), it is clear the statute does not require real-time provider updates and allows plans to make annual (or semi-annual) inquiries of providers about any updates that need to be made. In addition, the DMHC allows health plans to deviate from [s]ection 1367.27's requirements . . . . Given the above, the Court finds the [People's] interpretation of the statute to be overly simplistic, inaccurate and would require the Court to disregard policy judgments that have already been made by the Legislature and the DMHC."

After explaining its reasons for abstaining from deciding the People's UCL claim based the "unlawful" prong of Kaiser's alleged violation of section 1367.27, the court then stated: "It is also for the above noted reasons that the Court finds that it should abstain from every other basis for liability asserted by the [People] under the UCL and FAL."

The court rejected the People's argument that it should not abstain from adjudicating their action because they were seeking remedies that were not available to the DMHC, such as restitution and civil penalties available under the UCL and FAL. The court noted that the UCL's and FAL's equitable remedies were subject to a trial court's broad discretion, whereas "[t]he DMHC, on the other hand, can order restitution, cease and desist orders, fines and administrative penalties, revoke or suspend a plan's license, and/or bring an action in superior [court] or request that the Attorney General to [*sic*] obtain injunctive relief and other equitable relief. [Citation.]" The court stated: "Notably, an aggrieved party is free to bring an action for breach of contract and other tort remedies. In addition, [Kaiser] also pointed out that the DMHC may require a health plan to provide coverage to an enrollee where he or she obtained services from a provider that was not in-network due to materially inaccurate, misleading or incomplete information contained in a [PD]. [Citation.]" Accordingly, the court concluded that the People's argument against judicial abstention because of remedies that are unavailable to the DMHC to be "unpersuasive."[4]

C

In general, in reviewing an order granting a motion for summary judgment, "[w]e review the entire record, 'considering all the evidence set forth in the moving and opposition papers except that to which objections

---

[4]    In its order, the court also granted the parties' requests for judicial notice, which included Kaiser's request for judicial notice of certain documents related to the legislative history of section 1367.27. Unlike the court's order granting the motion for summary judgment in the People's related case against Molina, its order in this case did not mention, much less discuss, the primary jurisdiction doctrine that Molina had alternatively raised in support of its motion, presumably because Kaiser's motion for summary judgment did not assert that alternative ground in support of its motion.

16

have been made and sustained.' [Citation.]  Evidence presented in opposition to summary judgment is liberally construed, with any doubts about the evidence resolved in favor of the party opposing the motion.  [Citation.] [¶] Summary judgment is appropriate only 'where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' [Citation.]  A defendant seeking summary judgment must show that the plaintiff cannot establish at least one element of the cause of action. [Citation.]" (*Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618; see also Code Civ. Proc., § 437c, subd. (c).)  In sum, "[i]f a party moving for summary judgment in any action . . . would prevail at trial without submission of any issue of material fact to a trier of fact for determination, then he should prevail on summary judgment." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 855.)

Nevertheless, as the parties acknowledge, in the context of an order dismissing an action based on a trial court's exercise of its discretion to abstain from adjudicating an action, we apply the abuse of discretion standard of review.  (*Hambrick, supra*, 238 Cal.App.4th at p. 146; *Arce, supra*, 181 Cal.App.4th at p. 482; *Alvarado v. Selma Convalescent Hospital* (2007) 153 Cal.App.4th 1292, 1297 (*Alvarado*).)  "A trial court abuses its discretion when its decision exceeds the bounds of reason by being arbitrary, capricious or patently absurd in light of the circumstances.  [Citations.]" (*Hambrick*, at p. 147.)  " 'Unless there has been a clear miscarriage of justice, a reviewing court will not substitute its opinion for that of the trial court so as to avoid divesting the trial court of its discretionary power.  [Citation.]' " (*Ibid.*)  However, if a trial court exercised its discretion to abstain from adjudicating an action based on its mistaken view of the applicable principles of law, the court erred regarding the scope of its discretion and therefore

17

abused its discretion. (*Ibid.*; *Acosta v. Brown* (2013) 213 Cal.App.4th 234, 258 (*Acosta*).) " ' "Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion." ' " (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540.) Alternatively stated, "when a trial court's decision rests on an error of law, that decision is an abuse of discretion." (*People v. Superior Court (Humberto S.)* (2008) 43 Cal.4th 737, 746 (*Humberto S.*).) On appeal, the burden is on the appellant to establish an abuse of discretion. (*Acosta*, at p. 244.)

D

*UCL unlawful prong based on section 1367.27.* The People contend that the trial court abused its discretion by applying the doctrine of judicial abstention and declining to adjudicate the "unlawful" prong of their UCL cause of action. In particular, the People argue the court should not have abstained from adjudicating their UCL claim based on their complaint's allegations that Kaiser violated section 1367.27's PD accuracy requirements. As we explain below, we conclude that section 1367.27 sets forth certain clear requirements for PD accuracy, allowing a trial court to perform its ordinary judicial functions in adjudicating a UCL claim based on allegations that a health plan violated those requirements. Because the trial court here erred in construing section 1367.27 and did not correctly apply the standards for judicial abstention, the court abused its discretion by abstaining from deciding the "unlawful" prong of the People's UCL cause of action and granting Kaiser's motion for summary judgment.

We begin with the trial court's conclusion that "the Legislature opted not to impose an accuracy requirement" in section 1367.27. As discussed above, section 1367.27, subdivision (a) provides in part: "A [PD] shall not list

18

or include information on a provider that is not currently under contract with the plan." That prohibition is a clear directive that a health plan must delete from its PD any provider that is not currently under contract with it. Furthermore, section 1367.27, subdivision (e)(1) provides that a health plan must "update" its online PD at least weekly "when informed of and upon confirmation by the plan" that: "(A) [a] contracting provider is no longer accepting new patients . . . [;] [¶] (B) [a] provider is no longer under contract for a particular plan product[;] [¶] (C) [a] provider's practice location or other information . . . has changed[;] [¶] (D) [u]pon completion of the investigation described in subdivision (o), a change is necessary based on an enrollee complaint that a provider was not accepting new patients, was otherwise not available, or whose contact information was listed incorrectly[; or] [¶] (E) [a]ny other information that affects the content or accuracy of the [PD]." Section 1367.27, subdivision (e)(2) provides that a plan shall also "delete" a provider from its PD on confirmation that: "(A) [a] provider has retired or otherwise ceased to practice[;] [¶] (B) [a] provider or provider group is no longer under contract with the plan for any reason[; or] [¶] (C) [t]he contracting provider group has informed the plan that the provider is no longer associated with the provider group and is no longer under contract with the plan." Section 1367.27, subdivision (*l*)(1) requires a health plan to review its PD at least annually "to ensure the accuracy of the information concerning each provider listed in the [PD]" and "shall, at least annually, review and update the entire [PD] for each product offered." Also, section 1367.27, subdivision (o)(1) requires a health plan to investigate reports of PD inaccuracies, providing: "Whenever a health care service plan receives a report indicating that information listed in its [PD] is inaccurate, the plan shall promptly investigate the reported inaccuracy and, no later than 30

19

business days following receipt of the report, either verify the accuracy of the information or update the information in its [PD], as applicable."

Construing the above statutory provisions together, we conclude, as the People argue, that section 1367.27 sets forth clear mandates governing the accuracy of PDs. Given these statutory mandates, we further conclude that a trial court has the authority and ability, in the exercise of its ordinary judicial function, to adjudicate a UCL claim based on alleged violations of section 1367.27. As in *Blue Cross*, the People here are "asking the court to perform an ordinary judicial function, namely, to grant relief under the UCL and the FAL for business practices that are made unlawful by statute." (*Blue Cross, supra*, 180 Cal.App.4th at pp. 157–158 [trial court did not err by overruling demurrer and exercising its discretion not to abstain from adjudicating UCL and FAL causes of action based on alleged violations of statutes prohibiting postclaims underwriting].) The trial court here "is, in the main, merely being called upon to enforce those statutory prohibitions." (*Id.* at p. 158.)

"[A]bstention is not appropriate where resolution of the issues involves solely the judicial function of resolving questions of law based on facts before the court." (*Hambrick, supra*, 238 Cal.App.4th at p. 152.) In this case, the People's complaint requests that the trial court simply apply section 1367.27's clear requirements for PD accuracy to the facts alleged and proven at trial, which the People argue will show Kaiser's violation of its statutory obligations regarding PD accuracy and thus the "unlawful" prong of their UCL cause of action. Therefore, their complaint merely requests that the trial court "perform an ordinary judicial function." (*Blue Cross, supra*, 180 Cal.App.4th at p. 157.) Abstention is not appropriate in these circumstances. (*Hambrick,* at p. 152.)

In its order granting Kaiser's motion for summary judgment, the trial court focused on other provisions of section 1367.27 in support of its view that the statutory scheme is merely one of establishing a "process" for PD updates and not mandating PD accuracy. Citing section 1367.27, subdivisions (j)(1), (m)(3), and (p), the court stated that those "process steps" make it "clear the statute does not require real-time provider updates and allows plans to make annual (or semi-annual) inquiries of providers about any updates that need to be made." The court also cited section 1343, subdivision (b), which authorizes the DMHC to allow health plans to deviate from section 1367.27's requirements if such deviation is in the public interest.

But the presence of the statutory process requirements does not negate the statute's other substantive accuracy requirements, on which the People's claims are based. Moreover, no one has suggested that the DMHC has authorized Kaiser to depart from these accuracy requirements, so enforcing them against Kaiser could not interfere with any judgment made by the DMHC. Thus, the trial court's focus on these other provisions of the statute do not support its abstention ruling.

Because we agree with the People that the statute contains accuracy as well as process requirements, we disagree with the trial court's conclusion that the People's contrary interpretation is "overly simplistic, inaccurate and would require the Court to disregard policy judgments that have already been made by the Legislature and the DMHC." The People are merely seeking to enforce the accuracy requirements of the statute as written. Accordingly, the trial court abused its discretion by basing its judicial abstention ruling on a mistaken view of the law regarding the purported absence of PD accuracy requirements in the statute. Moreover, even if the trial court's interpretation of the statute were correct, this would only go to

21

the merits of the People's claims, rather than any of the three factors for judicial abstention.

*Three factors for judicial abstention.* The People also argue that none of the three factors for abstention, as described above, support the application of the doctrine of judicial abstention to preclude the trial court's adjudication of their UCL cause of action based on Kaiser's alleged violations of section 1367.27. We agree.

*First factor.* First, and most importantly, the People argue that their authority to enforce section 1367.27's PD accuracy requirements through a UCL cause of action is complementary to the DMHC's regulatory authority over PD accuracy *and* that their requested relief would *not* require the trial court to assume, or interfere with, the functions of the DMHC. (*Hambrick, supra*, 238 Cal.App.4th at pp. 147–148; *Arce, supra*, 181 Cal.App.4th at p. 496; *Blue Cross, supra*, 180 Cal.App.4th at p. 158.) The UCL provides remedies that are cumulative to other remedies provided by law. (*Zhang, supra*, 57 Cal.4th at p. 371.) Therefore, as the People argue, the UCL contemplates that there will, in general, be complementary enforcement under other statutes. (*Ibid.*) The UCL "provides an equitable means through which both public prosecutors and private individuals can bring suit to prevent unfair business practices and restore money or property to victims of these practices" and while its "remedies are 'cumulative . . . to the remedies or penalties available under all other laws of this state' [citation], they are narrow in scope." (*Ibid.*) The UCL provides for injunctive and other equitable relief and, in addition, authorizes public prosecutors to request civil penalties. (*Abbott Laboratories, supra*, 9 Cal.5th at p. 652.)

Contrary to Kaiser's assertion, there is nothing in the language of section 1367.27 indicating that the Legislature intended the DMHC to have

22

exclusive authority to enforce section 1367.27's PD accuracy requirements. As discussed above, the DMHC has general regulatory authority over health plans under section 1341, subdivision (a). The DMHC also has specific regulatory authority to develop uniform standards for PDs (§ 1367.27, subd. (k)) and approve the policies and procedures submitted annually by health plans for the regular updating of their PDs (§ 1367.27, subd. (m)(1)). However, none of those regulatory powers support a reasonable inference that *only* the DMHC may enforce section 1367.27's clear requirements for PD accuracy. Therefore, we conclude that the People have the authority to enforce section 1367.27's PD accuracy requirements through a UCL cause of action and that enforcement authority is complementary to the DMHC's regulatory authority over PDs and their accuracy.

We further conclude, as the People argue, that their enforcement of section 1367.27's PD accuracy requirements will not assume, or interfere with, the regulatory functions of the DMHC. Kaiser does not cite, and we are unaware of, any relief requested in, or other action taken in prosecuting, the People's UCL cause of action that "inevitably would lead to conflicting rulings that would interfere with or undermine the regulatory authority of" the DMHC. (*People ex rel. Orloff v. Pacific Bell* (2003) 31 Cal.4th 1132, 1138 (*Orloff*).) And here, as in *Orloff*, the regulatory authority (i.e., the DMHC) has filed an amicus curiae brief in support of the People's concurrent and complementary enforcement of section 1367.27's accuracy requirements by means of a UCL cause of action. In its amicus brief, the DMHC does *not* assert that the People's action would interfere with the performance of the DMHC's regulatory duties regarding PD accuracy. (Cf. *Orloff*, at p. 1138; *TruConnect Communications, Inc. v. Maximus, Inc.* (2023) 91 Cal.App.5th 497, 511–512, 514 [judicial abstention as to plaintiff's UCL and tort causes of

23

action was not appropriate where there was mere possibility of, or potential for, conflict with regulatory agency's decision or enforcement action].)

Though not dispositive, we give considerable weight to the DMHC's position regarding section 1367.27 and its regulatory enforcement authority. In *Bell v. Blue Cross of California* (2005) 131 Cal.App.4th 211 (*Bell*), a judicial abstention case in which the DMHC also filed an amicus brief supporting private enforcement under the UCL, the court stated: "The construction of a statute by the executive department [i.e., the DMHC] charged with its administration is entitled to great weight and substantial deference." (*Id.* at p. 217, fn. 8; see also *In re Karla C.* (2003) 113 Cal.App.4th 166, 175 (*Karla C.*) [construction of statute by officials charged with its administration must be given great weight]; *Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1154–1155 (*Harrott*) [same]; cf. *Geier v. American Honda Motor Co., Inc.* (2000) 529 U.S. 861, 883–884 [in federal preemption case, court placed "some weight" on amicus brief filed by regulatory agency interpreting its own regulation and concluding that plaintiff's defective design action would interfere with its regulatory authority over vehicle seat belt requirements].) "[T]he mere possibility of, or potential for, conflict with the [DMHC] is, in general, insufficient in itself to establish that" the People's UCL cause of action for Kaiser's alleged violation of section 1367.27 is precluded by the DMHC's regulatory authority over health plans' PDs and their accuracy. (*Orloff, supra*, 31 Cal.4th at p. 1138.)

Here, as noted above, the DMHC's amicus curiae brief does not assert that the People's UCL cause of action would interfere with the performance of its duties and instead argues it would complement its regulatory efforts regarding PD accuracy. In particular, regarding the Knox-Keene Act, which includes section 1367.27, the DMHC states: "The People and DMHC

24

maintain concurrent jurisdiction to enforce the [Knox-Keene] Act. As a textual matter, nothing in the [Knox-Keene] Act states that DMHC's administrative processes provide the exclusive remedy for all potential violations of the [Knox-Keene] Act." The DMHC further states: "DMHC's enforcement authority of the [Knox-Keene] Act, as a general matter, and with respect to section 1367.27 specifically, is not exclusive according to the [Knox-Keene] Act or case law interpreting it."

Giving weight to the DMHC's interpretation of section 1367.27 and its own enforcement authority, we conclude that the People have concurrent, or complementary, authority to enforce section 1367.27's PD accuracy requirements by means of a UCL cause of action based on violations of those statutory provisions. Furthermore, in its amicus brief, the DMHC states that it "does not independently review [PDs] for inaccuracies," and again, in so doing, does *not* assert that the People's UCL and FAL causes of action based on PD inaccuracies would assume, or interfere with, its regulatory functions. Therefore, we infer that the DMHC does not interpret section 1367.27's provisions as providing it with the sole enforcement authority over PD accuracy or that the People's instant action would assume, or interfere with, its regulatory authority over PD accuracy.[5] Accordingly, based on our

_____

[5] We also note that the Attorney General for the State of California filed an amicus curiae brief in support of the People's appeal. In its brief, the Attorney General argues, among other things, that the DMHC and public prosecutors (e.g., the People in this case), serve different functions under, and have different roles and remedies in enforcing, section 1367.27 and other statutory provisions and their enforcement roles and remedies are complementary and do not conflict. In particular, the Attorney General argues: "Regulation by DMHC does not immunize a health plan from liability under the UCL and FAL." It further argues: "Notably, [s]ection 1367.27 itself does not foreclose dual enforcement . . . and is not purely regulatory in nature. The statute simply requires that [PDs] be accurate—

consideration of section 1367.27's provisions, relevant case law, and the DMHC's and Attorney General's amicus curiae briefs, we conclude that the first factor for the application of the doctrine of judicial abstention does not rationally support the trial court's decision to abstain from adjudicating the People's UCL cause of action based on Kaiser's alleged violation of section 1367.27's PD accuracy requirements.[6]

*Second factor.* Regarding the second factor, the People argue that adjudication of their UCL cause of action based on Kaiser's alleged violation of section 1367.27's PD accuracy requirements would not require the determination by the trial court of complex economic policy, which would be best handled by the Legislature or the DMHC. (*Hambrick, supra,*

---

maintaining inaccurate [PDs], then, is an unlawful business act under the UCL." Therefore, the Attorney General argues that the trial court abused its discretion by abstaining from adjudicating the People's UCL and FAL causes of action. Although the Attorney General is not the regulatory agency that enforces section 1367.27's requirements, its position is consistent with the DMHC's and we find it to be persuasive in determining whether the People's UCL cause of action would assume, or interfere with, the regulatory authority of the DMHC. (Cf. *Bell, supra*, 131 Cal.App.4th at p. 217, fn. 8; *Harrott, supra*, 25 Cal.4th at pp. 1154–1155; *Karla C., supra*, 113 Cal.App.4th at p. 175.)

[6] Although Kaiser cites cases, including *Hambrick*, *Alvarado*, and *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781 (*Desert Healthcare*), which affirmed trial court orders abstaining from adjudicating UCL and FAL causes of action, the underlying factual allegations and relevant statutes in those cases are inapposite to those in this case and therefore do not persuade us to reach a contrary conclusion. (*Hambrick, supra*, 238 Cal.App.4th at pp. 149, 152 [abstaining from adjudicating what level of risk assumed by medical group under capitation agreement would make it a health care service plan]; *Alvarado, supra*, 153 Cal.App.4th at pp. 1295, 1304–1306 [abstaining from adjudicating alleged violations of complex nursing hour requirements for skilled nursing and intermediate care facilities]; *Desert Healthcare*, at p. 796 [abstaining from adjudicating appropriate levels of capitation].)

238 Cal.App.4th at pp. 147–148; *Arce, supra*, 181 Cal.App.4th at p. 496; *Blue Cross, supra*, 180 Cal.App.4th at p. 1258.) In support of their argument, the People cite *Blue Cross*, in which the court stated: "[T]he city attorney's suit does not call upon the court to determine complex economic policy. The Legislature has already made the relevant policy determinations by defining and outlawing postclaims underwriting. The court is, in the main, merely being called upon to enforce those statutory provisions." (*Blue Cross*, at p. 1259.) The People also cite *Arce*, in which the court stated: "[T]he Legislature already has made the relevant policy determinations in mandating that health care plans provide coverage for the medically necessary treatment of autism under the same terms and conditions applied to other medical conditions." (*Arce, supra*, 181 Cal.App.4th at p. 501.)

Similar to the conclusions in *Blue Cross* and *Arce*, we conclude that the Legislature here has already made its determinations involving complex economic policy, as well as general policy, by enacting section 1367.27's clear requirements for PD accuracy. (Cf. *Blue Cross, supra*, 180 Cal.App.4th at p. 1259.) Therefore, in simply adjudicating the People's UCL cause of action based on Kaiser's alleged violation of those clear statutory requirements, the court would not be making *any* economic or other policy determinations. It would merely be enforcing the policy judgments already made by the Legislature. Accordingly, this factor also does not rationally support the trial court's decision to abstain.

*Third factor*. Regarding the third factor, the People argue that the relief they request in their complaint, which includes certain injunctive relief, would not be unnecessarily burdensome for the trial court to monitor and that there is no other means of redress that would be more effective. (*Hambrick, supra*, 238 Cal.App.4th at pp. 147–148; *Arce, supra*,

27

181 Cal.App.4th at p. 496; *Blue Cross, supra*, 180 Cal.App.4th at p. 1258.) In their UCL cause of action, the People request the following relief: (1) civil penalties pursuant to Business and Professions Code sections 17206, subdivision (a) and 17206.1, subdivision (a)(1); (2) restitution; and (3) provisional and final remedies against Kaiser, including, without limitation, "an injunction prohibiting [Kaiser] from continuing [its] unlawful, unfair, and fraudulent activities."

In *Blue Cross*, the court stated: "There is no indication in the city attorney's complaint that it is asking for the court to monitor anyone or anything. The city attorney is asking for an injunction. If the trial court issues an injunction, then defendants will be expected to comply with it, but that does not impose on the court any active role in monitoring compliance." (*Blue Cross, supra*, 180 Cal.App.4th at p. 1259.) As in *Blue Cross*, we conclude here that the People's request for injunctive relief on their UCL cause of action simply requests an injunction and, in so doing, does not request any ongoing monitoring of Kaiser's future conduct. (*Ibid.*; cf. *Arce, supra*, 181 Cal.App.4th at p. 500 [abstention not warranted where no indication that requested injunctive or declaratory relief would require long-term monitoring or would otherwise be unnecessarily burdensome for trial court].)

In issuing injunctive relief in its equitable discretion, the trial court would have the ability to fashion an injunction that, for example, simply prohibits future violations by Kaiser of section 1367.27's PD accuracy requirements, which could be identified by reference to specific subdivisions of section 1367.27. The People would then be in a position to file a future enforcement action if they believe Kaiser violated that injunction. In that scenario, no ongoing monitoring by the court would be required and thus no

unnecessary burden would be imposed on the court to conduct ongoing monitoring of its injunction. (Cf. *Blue Cross, supra*, 180 Cal.App.4th at p. 1259.) Furthermore, as in *Blue Cross*, the People's complaint does not seek only injunctive relief, but also seeks civil penalties and restitution. (Cf. *ibid.*) Therefore, Kaiser could not show the trial court should have abstained from adjudicating the People's UCL cause of action in its entirety, because the third factor concerns only the possible burdens imposed on a trial court to monitor an injunction. (*Ibid.*)

Finally, we are unpersuaded by Kaiser's assertion that the DMHC has more effective means than the People have (i.e., remedies available to the People pursuant to the UCL) for redress of any violations by Kaiser of section 1367.27's PD accuracy requirements. Although, as the DMHC notes in its amicus curiae brief, the DMHC possesses a range of remedies for enforcement of section 1367.27's provisions, which are similar to those available to the People pursuant to a UCL cause of action, Kaiser does not show that the DMHC's remedies are more effective in remedying its alleged violations of section 1367.27's PD accuracy requirements than the remedies the People seek in their UCL cause of action. Also, contrary to Kaiser's apparent assertion, we conclude that the unique remedies available to the People and the trial court under the UCL for Kaiser's alleged violations of section 1367.27's PD accuracy requirements, which are unavailable to the DMHC in the performance of its regulatory authority under section 1367.27 (and the Knox-Keene Act in general), weigh against the application of judicial abstention in this case. (*Hambrick, supra*, 238 Cal.App.4th at p. 148; *Klein, supra*, 202 Cal.App.4th at p. 1369.) In particular, as the People argue, the UCL would allow them to seek remedies for those enrollees and employers who were harmed by their reliance on Kaiser's alleged PD inaccuracies.

29

Kaiser does not cite, nor are we aware of, any express provision in section 1367.27 or elsewhere in the Knox-Keene Act granting the DMHC the authority to seek such remedies for broad classes of enrollees and employers.

Because the trial court's order omitted any substantive analysis of each of the three factors that courts generally must consider in exercising their discretion to abstain from adjudicating an action, and because it relied on an incorrect interpretation of the statute, we conclude that the court did not apply the correct principles of law, and therefore abused its discretion, by deciding to abstain from adjudicating the People's UCL cause of action based on Kaiser's alleged violations of section 1367.27's PD accuracy requirements. (*Hambrick, supra*, 238 Cal.App.4th at p. 147; *Acosta, supra*, 213 Cal.App.4th at p. 258; *Humberto S., supra*, 43 Cal.4th at p. 746.)  For the reasons we have discussed, we further conclude that, in the circumstances of the instant action, it would exceed the bounds of reason for a court to abstain from adjudicating the People's UCL cause of action based on Kaiser's alleged violations of section 1367.27's PD accuracy requirements.  Accordingly, we reverse the trial court's order and conclude that on remand the court may not abstain from adjudicating the People's UCL cause of action based on these alleged violations.  (Cf. *Arce, supra*, 181 Cal.App.4th at pp. 500– 502 [trial court abused its discretion by abstaining from adjudicating UCL cause of action based on alleged Mental Health Parity Act violations because that statute imposed mandatory obligations on health plans and was not purely a regulatory statute and the matters were not within exclusive jurisdiction of the DMHC and did not require court to evaluate complex issues of economic policy].)

E

*UCL unlawful prong based on other predicate statutes*. The People contend that the trial court also abused its discretion by abstaining from adjudicating their UCL cause of action based on Kaiser's alleged violations of statutes other than section 1367.27 (i.e., other predicate statutes). As discussed above, the People's complaint alleged, among other things, that Kaiser published inaccurate PDs and, in so doing, violated certain state and federal statutes and regulations other than section 1367.27, including: (1) the Affordable Care Act; (2) the Federal Mental Health Parity and Addiction Equity Act; (3) sections 1367.03 and 1367.035 regarding reporting of timely access and physician data; and (4) federal Medicare regulations requiring PD accuracy.[7] The People argue that the trial court abused its discretion by failing to properly consider each of those predicate statutes and regulations before abstaining from adjudicating the unlawful prong of their UCL cause of action. Instead, they argue the court wrongly relied *solely* on Kaiser's alleged violations of section 1367.27 in deciding whether it should abstain from adjudicating *all* of Kaiser's alleged violations of state and federal statutes and regulations underlying the unlawful prong of their UCL cause of action.[8]

---

[7] The People's complaint also alleged that Kaiser failed to comply with section 1367.27, subdivision (f)'s requirement that it prominently disclose in its PDs and on its internet website both an email address and a telephone number for members of the public and providers to notify it if the information in its PDs appears to be inaccurate.

[8] We reject Kaiser's argument that the People waived or forfeited this contention because they did not adequately raise it below in opposition to Kaiser's motion for summary judgment. In particular, we note that it was Kaiser's burden to show there was no triable issue of material fact and that it was entitled to judgment and therefore Kaiser also had the burden to show

31

In its order, the trial court substantively discussed only section 1367.27 in accepting Kaiser's argument that the court should abstain from adjudicating the People's action against it. For example, the court stated: "The statute at issue here is . . . section 1367.27," and then described certain subdivisions of section 1367.27. As discussed above, the court then rejected the People's interpretation of section 1367.27 as overly simplistic and inaccurate and stated that adjudication of that issue would disregard policy judgments already made by the Legislature. The court then found that for those very same reasons (i.e., "for the above noted reasons"), it would also abstain from adjudicating all other grounds for the People's UCL and FAL causes of action (e.g., other statutory and regulatory predicates for the unlawful prong of their UCL cause of action).

As we concluded above, the court abused its discretion in abstaining from adjudicating the People's section 1367.27 predicate for the unlawful prong of their UCL cause of action. Because the court relied solely on this same faulty reasoning in abstaining from adjudicating the other predicates for the unlawful prong, we conclude that the court's abstention ruling as to those other UCL predicates cannot stand for the reasons we have discussed.

---

that the trial court should abstain from adjudicating each of the causes of action alleged against it. It was not the People's burden to show that the court should not abstain from adjudicating their causes of action. To the extent Kaiser argues that the People waived their contention by failing to raise their "new theory" in their opposition to its motion for summary judgment, Kaiser incorrectly describes the predicates expressly alleged in the People's complaint as "new." As the People note, they expressly raised and discussed the issue of the other predicate statutes and regulations in their opposition to Kaiser's motion for summary judgment. Therefore, we conclude the People preserved that contention for appeal and did not waive or forfeit it. (Cf. *Summers v. Superior Court* (2018) 24 Cal.App.5th 138, 143 [single sentence in trial court brief was sufficient to preserve issue for appeal].)

Accordingly, we reverse the trial court's abstention ruling as to those alternate UCL theories as well.

## F

*UCL unfair and fraudulent prongs.*  The People contend that the trial court also abused its discretion by abstaining from adjudicating the unfair and fraudulent prongs that they separately alleged as grounds for their UCL cause of action.  As noted above, the People's complaint alleged, among other things, that Kaiser's practices were unfair and fraudulent within the meaning of the UCL (e.g., misleading and/or fraudulent advertising regarding providers listed in its PDs).  (Bus. & Prof. Code, § 17200.)  As demonstrated in Section IV(E) above, the trial court substantively discussed only section 1367.27 in accepting Kaiser's argument that the court should abstain from adjudicating the People's action against it.  The court then, in a conclusory manner, applied its faulty reasoning for abstaining from adjudicating the UCL unlawful prong based on section 1367.27 to the other UCL prongs and abstained from adjudicating those UCL prongs as well.  Once again, however, because the premise of the court's reasoning to abstain from adjudicating the unfair and fraudulent prongs of the People's UCL cause of action was faulty as discussed above, its reliance on that faulty premise was an abuse of its discretion.  Accordingly, we reverse the trial court's abstention ruling as to these UCL theories as well.

## G

*FAL cause of action.*  For the same reasons discussed in Section IV(E) and (F), the People contend that the trial court also abused its discretion by abstaining from adjudicating their FAL cause of action.  Their FAL cause of action incorporated the complaint's preceding allegations and specifically alleged that Kaiser violated the FAL by publicly disseminating false and

33

misleading PDs through which it hoped to obtain customers.  Because the trial court incorporated the same erroneous reasons for abstaining from the FAL cause of action as it gave for abstaining from the UCL cause of action, we reverse its abstention ruling as to the FAL cause of action as well.

H

*Conclusion*.  Because we conclude that the trial court abused its discretion by abstaining from adjudicating each of the three prongs of the People's UCL cause of action and their FAL cause of action, we must reverse the order granting Kaiser's motion for summary judgment and the judgment entered in Kaiser's favor.

DISPOSITION

The judgment is reversed and the matter is remanded with directions that the trial court vacate its order granting Kaiser's motion for summary judgment and issue a new order denying its motion for summary judgment. The People shall recover their costs on appeal.

BUCHANAN, Acting P. J.

WE CONCUR:

KELETY, J.

CASTILLO, J.

34

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE ex rel. MARA W. ELLIOTT, as San Diego City Attorney, etc.,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>KAISER FOUNDATION HEALTH PLAN, INC.,<br><br>        Defendant and Respondent. | D081262<br><br><br>(Super. Ct. No. 37-2021-00027298-CU-BT-CTL)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed September 30, 2024, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests filed October 18, 2024, and October 21, 2024, pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

BUCHANAN, Acting P. J.

Copies to:  All parties